Rivera, J.
*593 Defendants Jennifer Dessel and her daughter, Emily Seal, were half-owners of an investment property; plaintiff Gayle S. Cummings owned the other half. After disputes arose, Cummings sued seeking partition of the property. Following a bench trial, and over the objection of Dessel and Seal, the court ordered partition of the property by the appraisal method-that is, each half-owner could bid to purchase the other half-owner's interest, with the minimum bid set by appraisal. Dessel and Seal appealed.
In the published portion of the opinion, we conclude the trial court erred when it ordered partition of the property by appraisal because the parties had not agreed to that method, as is required by the statute. In the unpublished portion of the opinion, we conclude defendants have not shown the error was prejudicial. We also reject defendants' contention that the court abused its discretion in denying their request to continue the trial. Accordingly, we shall affirm the judgment.
I. BACKGROUND
A. The Property
In 2009, Dessel, Seal, and Cummings agreed to together purchase a parcel of land containing a relatively small and dilapidated residence with a carport. The parcel was located at 3950 Fieldbrook Road, in Fieldbrook, California (the property), and the parties' plan was to remodel the residence, converting it to a vacation rental. The parties agreed to pay the seller $200,000. Cummings made a down payment of $80,000, and the seller agreed to *465 carry a note for the balance of $120,000, to be due in full in June 2015. The parties committed to make monthly interest-only payments to the seller of about $700, and to pay all insurance and property taxes.
Dessel, Seal, and Cummings signed a promissory note (the agreement), providing that Dessel and Seal would match Cummings's initial $80,000 investment by making the monthly payments on the seller's note, paying all insurance and property taxes, and contributing labor and materials to renovate the property. Once Dessel and Seal had contributed $80,000 through these methods, the parties agreed, the three would share "enjoyment[ ]" of the property and related "liabilities" and "responsibilities," allocated in two equal shares, with one (50 percent) share for Cummings, and the other (50 percent) share to be divided equally between Dessel and Seal.
*594 After the parties signed the agreement, a dispute arose regarding the grant deed the seller had signed. The deed was recorded on June 26, 2009, and gave each party an equal one-third interest in the property, listing them as joint tenants. Seal later argued the agreement had been to share any profits 50-50, but to divide ownership into equal one-third shares. Cummings disputed this point, maintaining the agreement had been to allocate ownership in two equal shares, with one 50-percent share for her and the other 50-percent share divided equally between Dessel and Seal. Cummings subsequently recorded quitclaim deeds, which reflected the latter division, and described the parties as tenants in common.
With this exception, the partnership initially proceeded as planned. Dessel and Seal made payments as agreed and commenced work on the property. During the course of about a year, they gutted the residence, leaving it a shell. At that point, Dessel and Seal stopped work on the property. Then, in late November or early December 2010, they told Cummings they could no longer make their monthly payments. The parties' relationship deteriorated. Eventually, Cummings took over the monthly payments and payment of the property taxes to protect her investment.
B. Procedural History
In August 2011, Cummings filed suit against Dessel and Seal, alleging causes of action, among other things, for quiet title to establish her 50 percent ownership interest in the property and for partition. Dessel and Seal filed a cross-complaint, alleging several causes of action-for breach of contract, breach of an implied covenant of good faith and fair dealing, nuisance, fraud, and injunctive relief-essentially contending the court should enforce the parties' agreement.
The bench trial of this matter was continued several times. Eventually, it was scheduled to commence on November 3, 2014. Two weeks before that date, on October 21, 2014, Dessel and Seal, representing themselves, filed a motion to continue the trial to an indefinite date in "the first part of 2015." They explained they had not yet raised the funds to retain counsel, they were grieving the sudden death of a close family friend whose funeral might be scheduled for a date during the trial, and they might need to travel to visit Dessel's father, and Seal's grandfather (Grandfather), who recently had been hospitalized, and was reported to be in rapidly declining health. Cummings opposed the request, pointing out that the trial date had been continued several times previously, including once almost a year earlier, after the attorney then representing Dessel and Seal had withdrawn. Cummings observed the long delay left her alone responsible for meeting payments on the *595 note, even *466 though Seal was the person then actually residing on the property. The court issued an order denying the motion, but continuing the trial to November 6 for reasons of court necessity. In the order, the court stated an intent to take a one-day recess on November 8, to allow Dessel and Seal to attend the funeral of the family friend, if it was scheduled for that date. When the parties, thereafter, appeared for trial on November 6, 2014, the court ordered a further continuance until December 1, 2014, due to its own unavailability.
On December 1, Cummings appeared for trial with her counsel, and Seal appeared representing herself. Dessel did not appear. Although no court reporter was present on that date, and the record, therefore, includes no transcript of the proceedings,[1] other documents included in the record indicate that Seal told the trial court Dessel was ill-without providing any supporting documentation-and requested a further continuance, which the court denied. The bench trial then commenced and continued for five days.[2]
After the parties completed their presentation of evidence, the trial judge stated his intended findings, which he later confirmed in an interlocutory judgment filed on January 6, 2015. The interlocutory judgment granted Cummings's quiet title cause of action, determining that Cummings owned 50 percent of the property, Dessel and Seal each owned 25 percent, and the parties held the property as tenants in common. Additionally, concluding partition was an appropriate remedy, the interlocutory judgment specified a procedure by which the parties could bid against each other to purchase the property, and set $125,000 as the minimum bid, "based upon the testimony of [Cummings's] expert witness Matthew Babich."[3] Finding that Cummings, by then, had invested a total of $124,353.51 in the property, including her original down payment, while Dessel and Seal had invested $39,588.36, the trial court ruled Cummings was entitled to a credit in the bidding process equal to the amount of the difference ($84,765.15). The successful bidder was to assume all existing obligations under the parties' agreement and the *596 seller's note. If no party took title to the property, the interlocutory judgment directed, it was to be listed and sold to the public at whatever value bidders offered.[4]
Pursuant to the procedure specified in the interlocutory judgment, on January 30, 2015, Cummings submitted the minimum bid for the property ($125,000). Dessel and Seal did not submit bids. Under the interlocutory *467 judgment, this meant Cummings was awarded full ownership of the property. Because she had an outstanding credit of $84,765.15, and would assume sole responsibility for completing payment on the seller's outstanding note ($120,000), the interlocutory judgment allowed Cummings to buy the property from Dessel and Seal without paying any additional money. On May 8, 2015, the trial court filed an amended judgment confirming completion of the sale and Cummings's status as sole owner of the property. The amended judgment awarded Cummings her attorney fees and costs. This timely appeal followed.
II. DISCUSSION
A. Partition
1. Legal principles and standard of review
"A co-owner of real or personal property may bring an action for partition. ( Code Civ. Proc., § 872.210.) 'The primary purpose of a partition suit is ... to partition the property, that is, to sever the unity of possession. [Citations.]' [Citation.]" ( LEG Investments v. Boxler (2010) 183 Cal.App.4th 484, 493, 107 Cal.Rptr.3d 519 ; see also 14859 Moorpark Homeowner's Ass'n v. VRT Corp. (1998) 63 Cal.App.4th 1396, 1404-1405, 74 Cal.Rptr.2d 712 [" 'partition' " is " 'the procedure for segregating and terminating common interests in the same parcel of property' "].) " 'Partition is a remedy much favored by the law. The original purpose of partition was to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land. An additional reason to favor partition is the policy of facilitating transmission of title, thereby avoiding unreasonable restraints on the use and enjoyment of property.' [Citation]." ( LEG Investments , supra , at p. 493, 107 Cal.Rptr.3d 519.) "[A]lthough the action of partition is of statutory origin in this *597 state, it is nonetheless an equitable proceeding." ( Elbert, Ltd. v. Federated Income Properties (1953) 120 Cal.App.2d 194, 200, 261 P.2d 743 ; see Code Civ. Proc.,[5] § 872.140.)
"If the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property and, unless it is to be later determined, the manner of partition." (§ 872.720, subd. (a).) The manner of partition may be "in kind"-i.e., physical division of the property (see, e.g., Butte Creek Island Ranch v. Crim (1982) 136 Cal.App.3d 360, 365, 186 Cal.Rptr. 252 ( Butte Creek ))-according to the parties' interests as determined in the interlocutory judgment. (§ 872.810; see § 873.210 et seq.) Alternatively, if the parties agree or the court concludes it "would be more equitable," the court may order the property sold and the proceeds divided among the parties. (§ 872.820; see § 873.510 et seq.) The third option, "[w]hen the interests of all parties are undisputed or have been adjudicated," and the parties agree (§ 873.910), is partition by appraisal. (See § 873.910 et seq.)
"As a rule, the law favors [the first option,] partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will." ( Richmond v. Dofflemyer (1980) 105 Cal.App.3d 745, 757, 164 Cal.Rptr. 727 ; see §§ 872.810, 872.820.) "The presumption is that land held in common tenancy can be equitably divided between the parties by allowing each a tract in severalty, equal to his interest in the whole, measured by value. [Citation.]" ( *468 Richmond , supra , at p. 757, 164 Cal.Rptr. 727.) " '[I]n many modern transactions, [however,] sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical....' " ( Butte Creek , supra , 136 Cal.App.3d at p. 365, 186 Cal.Rptr. 252.)
The standard of review for an interlocutory judgment of partition is abuse of discretion. (See, e.g., Butte Creek , supra , 136 Cal.App.3d at p. 369, 186 Cal.Rptr. 252 ; see also Lin v. Jeng (2012) 203 Cal.App.4th 1008, 1025, 138 Cal.Rptr.3d 84 ["When a trial court makes a ruling based upon equitable considerations, the abuse of discretion standard applies on review of that ruling"].) Under that standard, "[t]he trial court's 'application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.]" ( In re Charlisse C. (2008) 45 Cal.4th 145, 159, 84 Cal.Rptr.3d 597, 194 P.3d 330.) "[A] disposition that rests on an error of law [also] constitutes an abuse of discretion. [Citation.]" ( Ibid . )
*598 2. Analysis
a. Partition method
Here, concluding physical partition, or partition in kind, was not feasible, the trial court prescribed a partition procedure that potentially included two separate stages, effectively combining partition by appraisal and partition by sale as successive alternatives. In the first stage, the parties could bid against each other to purchase the property and take title independently, with the minimum bid specified as $125,000, based upon the appraisal of Cummings's expert Babich. If no party submitted a bid matching or exceeding the minimum amount, the property was to be listed and sold to the public at whatever value could be obtained. Dessel and Seal contend this procedure did not meet the requirements for either partition by appraisal or partition by sale and the trial court, therefore, erred in adopting it. We agree.
The first stage of the procedure amounted to partition by appraisal. Under this alternative, one or more parties may acquire the interests of other co-owners in a piece of property at the appraised value of those interests. (§ 873.910 et seq.; see also, e.g., 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 82, p. 130 ; Recommendation Relating to Partition of Real and Personal Property (Jan. 1975) 13 Cal. Law Revision Com. Rep. (1975) p. 414.) The California Law Revision Commission, in 1975, recommended the legislation that created this alternative, along with other statutory changes intended to "reorganize[ ], revise[ ], and modernize[ ]" the partition statute. (Recommendation Relating to Partition of Real and Personal Property, supra , 13 Cal. Law Revision Com. Rep. at p. 411.) Although there is no case law interpreting the statutes authorizing partition by appraisal, the Commission's 1975 report explained they were intended to address situations "where physical division [would be] inequitable or impossible, and sale [would] result in an unwanted tax liability or in loss of property which one of the owners desire[d] to keep." (Id . at p. 414.) Partition by appraisal, the Commission advised, would "be an expeditious and effective means of terminating the differences among the co-owners, while at the same time allowing one to retain the property without the expenses of sale and without the imposition of undesired tax liability." (Ibid .; see, e.g., DP Pham LLC v. Cheadle (2016) 246 Cal.App.4th 653, 670, fn. 7, 200 Cal.Rptr.3d 937 [" ' "Explanatory comments by a law revision commission are persuasive evidence of the intent of the *469 Legislature in subsequently enacting its recommendations into law" ' "].)
The unambiguous language of the partition by appraisal statutory provisions, however, requires an agreement among the parties. Section 873.910-the first section of chapter 7 of title 10.5, which describes partition by appraisal-states, "[w]hen the interests of all parties are undisputed or have *599 been adjudicated, the parties may agree upon a partition by appraisal pursuant to this chapter." (Italics added.) Section 873.920-the next section of the chapter-directs, "[t]he agreement shall be in writing filed with the clerk of court ...."[6] (Italics added.) Here, however, as Cummings acknowledges on appeal, there was no agreement among the parties, written or otherwise, to partition the property by appraisal. The trial court, therefore, erred as a matter of law in adopting a procedure that commenced with a partition-by-appraisal bidding stage.
Cummings attempts to avoid this result by characterizing the trial court's prescribed procedure as directing partition by a private sale, and not partition by appraisal. But the procedure specified in the interlocutory judgment did not meet the statutory requirements for a private sale. Under section 872.820, a trial court may compel the sale of a property, and division of the proceeds among the parties, without the parties' agreement, if it determines this "would be more equitable than division of the property." In such circumstances, the court may order the property "sold at public auction or private sale," depending on which will be "more beneficial to the parties." (§ 873.520.) In doing so, the court may "prescribe such manner, terms, and conditions of sale not inconsistent with the provisions of this chapter as it deems proper for the particular property or sale." (§ 873.610, italics added.)
One provision of the referenced chapter-chapter 6 of title 10.5 (§ 873.510 et seq.)-directs that "[n]otice of the sale ... shall be given in the manner required for notice of sale of like property upon execution." (§ 873.640, subd. (a).)[7] The plain language of this provision contains no exception for private sales. The requirements for notice of sale of an interest in real property upon execution are stated in section 701.540, and include public notice. Among other things, section 701.540 directs that notice of the sale *600 must be posted both on the property to be sold and in one public place in the city or county where the sale is to occur, and requires that notice also be published once a week for *470 three successive weeks in a local newspaper of general circulation. (§ 701.540, subds. (d)(1), (g);[8] see also Gov. Code, § 6063.[9] )
The partition statutes further direct that "[t]he court shall prescribe the contents of the notice of sale, which shall include a description of the property, the time and place of sale, and a statement of the principal terms of sale." (§ 873.650, subd. (a).) A notice of private sale must also "state a place where bids or offers will be received and a day on or after which the sale will be made." (§ 873.650, subd. (b).) A private sale may not be completed "before the day specified in the notice of sale but shall be made within one year thereafter." (§ 873.680, subd. (a).) The bids or offers for a private sale "shall be in writing and left at the place designated in the notice at any time after the first publication or, if none, the posting of the notice." (§ 873.680, subd. (b).) Only three categories of people are identified as being ineligible to purchase property in a partition sale, namely, a referee appointed by a court to divide or sell the property (see § 873.010, subd. (a)), a party's attorney, and a party's guardian or conservator unless for the party's benefit. (§ 873.690.)
Viewing the statutory framework as a whole, it is evident the intent was to ensure that members of the public receive notice and have an opportunity to *601 bid on property during a partition sale, whether a sale at public auction or a private sale. (See, e.g., Bruns v. E-Commerce Exchange, Inc. (2011) 51 Cal.4th 717, 724, 122 Cal.Rptr.3d 331, 248 P.3d 1185 [In interpreting a statute, we examine the language "in the context of the statutory framework as a whole in order to determine its scope and purpose"].) This is logical because, by maximizing the pool of potential bidders, one might reasonably hope to secure a higher sales price.
The word "private," as used in the term "private sale" in the partition statutes apparently refers to the bidding pro *471 cedure -i.e., written bids submitted at a designated location (§ 873.680, subd. (b)), to be reviewed by the referee conducting the sale (see §§ 873.010, subd. (a), 873.710), presumably in a setting that is private, as compared to a public auction. Indeed, to construe the term "private sale" as restricting the bidders only to the co-tenants of the property, would be inconsistent with the provisions of chapter 6 (§ 873.510 et seq.) and, in particular section 873.690, which, by clear implication, includes the public at large as bidders. (See, e.g., Lucioni v. Bank of America, N.A. (2016) 3 Cal.App.5th 150, 159, 207 Cal.Rptr.3d 418 [" 'Generally, the expression of some things in a statute implies the exclusion of others not expressed' "].) Interpreting the statutes describing partition by private sale as limiting potential bidders to the parties in the individual case also would make the transaction effectively identical to a partition by appraisal, and would render meaningless the limitation that partition by appraisal may occur only where the parties have agreed in writing. (§ 873.910; see, e.g., Donorovich-Odonnell v. Harris (2015) 241 Cal.App.4th 1118, 1133, 194 Cal.Rptr.3d 579 [" ' " ' "An interpretation that renders related [statutory] provisions nugatory must be avoided...." ' " ' "].) Accordingly, we reject Cummings's suggestion that we interpret the term in that manner.
The trial court's partition procedure also did not comply with the requirements governing partition by sale of the property, because it did not direct the public posting or publication of notice regarding the sale. The interlocutory judgment only directed Cummings's counsel to notify "the parties ... of the date, time, and location of the bidding." (Italics added.) As a result, the only notifications were the letters that Cummings's counsel sent Dessel and Seal, giving them the information for submission of any bids and notifying them afterward about Cummings's successful bid.
In sum, we conclude the trial court erred because the procedure it ordered did not comply with the statutory requirements for partition by *602 appraisal or for partition by sale.[10] We shall, nonetheless, affirm the judgment because the error was not prejudicial, as it did not affect the result.
b. Harmless error **
B.-C.**
III. DISPOSITION
The judgment is affirmed. In the interests of justice, each party to bear their own costs on appeal.
We concur:
Reardon, Acting P.J.
Streeter, J.

It appears neither party had requested a court reporter in advance of trial. (See Code Civ. Proc., § 269, subd. (a)(1) [court reporters are available in civil cases on a party's request]; Super. Ct. Humboldt County, Local Rules, rule 1.7.3 ["To ensure the presence of a court reporter for the first day of a proceeding lasting more than one hour, one or more of the parties must, at least five court days prior to the date ..., file a written statement requesting a court reporter's presence ... and pay their pro rata share of the one-half day fee"].)

Dessel made no appearance at the trial. A court reporter, however, did attend for the final three days of the trial.

Although the court minutes reflect Babich testified during the second day of trial, when no court reporter was present, in stating the court's intended findings, the trial court judge summarized Babich's testimony as valuing the property at between $100,000 and $150,000.

The trial court rejected the claims Dessel and Seal had presented in their cross-complaint without discussion, and Dessel and Seal did not take issue with that ruling in their opening appellate brief.

All undesignated statutory references below are to the Code of Civil Procedure.

Section 873.920 provides in full as follows: "The agreement shall be in writing filed with the clerk of court and shall include: [¶] (a) A description of the property. [¶] (b) The names of the parties and their interests. [¶] (c) The names of the parties who are willing to acquire the interests. [¶] (d) The name or names of a person or persons to whose appointment as referee or referees the parties consent. [¶] (e) The date or dates as of which the interests to be acquired are to be appraised. [¶] (f) Other terms mutually agreed upon which may include, but are not limited to, provisions relating to abandonment of the action if the appraised value of the interest to be acquired exceeds a stated amount, required deposits on account of purchase price, terms of any credit, title and objections to title, and payment of the expenses of the procedure authorized by this chapter and of costs of the action."

Section 873.640 provides in pertinent part as follows: "(a) Notice of the sale of real or personal property shall be given in the manner required for notice of sale of like property upon execution. Such notice shall also be given to every party who has appeared in the action and to such other interested persons as may have in writing requested the referee for special notice. [¶] (b) Where real and personal property are to be sold as a unit, notice of the sale may be in the manner required for notice of sale of real property alone. [¶] (c) The court may order such additional notice as it deems proper...."

Section 701.540 provides in pertinent part as follows: "(a) Notice of sale of an interest in real property shall be in writing, shall state the date, time, and place of sale, shall describe the interest to be sold, and shall give a legal description of the real property and its street address or other common designation, if any.... [¶] (b) Not less than 20 days before the date of sale, notice of sale of an interest in real property shall be served, mailed, and posted ... as provided in subdivisions (c), (d), (e), and (f). [¶] (c) Notice of sale shall be served on the judgment debtor. Service shall be made personally or by mail. (d) Notice of sale shall be posted in the following places: [¶] (1) One public place in the city in which the interest in the real property is to be sold if it is to be sold in a city or, if not to be sold in a city, one public place in the county in which the interest in the real property is to be sold. [¶] (2) A conspicuous place on the real property. [¶] .... [¶] (g) Notice of sale shall be published pursuant to Section 6063 of the Government Code, with the first publication at least 20 days prior to the time of sale, in a newspaper of general circulation published in the city in which the real property or a part thereof is situated if any part thereof is situated in a city or, if not, in a newspaper of general circulation published in the public notice district in which the real property or a part thereof is situated. If no newspaper of general circulation is published in the city or public notice district, notice of sale shall be published in a newspaper of general circulation in the county in which the real property or a part thereof is situated."

Government Code section 6063 provides as follows: "Publication of notice pursuant to this section shall be once a week for three successive weeks. Three publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient. The period of notice commences upon the first day of publication and terminates at the end of the twenty-first day, including therein the first day."

Because this error is legal in nature, involving the propriety of the remedy adopted, we reject Cummings's argument that the appeal must be denied for failure to provide an adequate record.

See footnote *, ante.