Filed 3/28/22  Hogan v. Hogan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANDREA P. HOGAN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>GREGORY A. HOGAN et al.,<br><br>    Defendants and Respondents. | G059131<br><br>(Super. Ct. No. 00D003239)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Waltz, Judge.  Request for judicial notice granted.  Reversed and remanded with instructions.

The Ryan Firm, Timothy M. Ryan, Andrew J. Mase, and Katherine K. Meleski for Plaintiff and Appellant.

Law Offices of Michael Leight, Michael Leight and John Gloger for Defendants and Respondents.

In this partition matter, Andrea P. Hogan[1] challenges the trial court's determination that a grant deed conveying a one-third ownership interest to her in a residential property only entitled her to "1/3 of the equity that accrued from December 8, 2014 and forward." We agree the trial court erred, and remand the matter for further proceedings in accordance with this opinion.

FACTS

Andrea is an adult daughter of Gregory and Laurie Hogan (collectively referred to as Parents). From November 1987 to December 10, 2014, Parents were the sole owners of the property at issue in this case (Property).

In 2013, Gregory asked Andrea to pay delinquent taxes on the Property, which she did. When he was unable to make a tax payment in 2014, Gregory again asked her to make that payment. Andrea agreed to make all tax payments going forward, as well as all insurance, repair, and maintenance costs until the Property was sold, in exchange for a one-third ownership interest.

To document their agreement, Gregory retained his own attorney to prepare the grant deed, which conveyed the unlimited agreed-upon 1/3 interest to Andrea. The grant deed did not include any exception or limitation of rights, and, specifically, it did not reserve the existing equity in the home to Parents.

Following their agreement, Andrea paid property taxes, insurance, and for all repairs on the Property from 2014 until at least April 2019. Gregory did not pay any of the taxes, insurance, or repairs on the Property from December 2014 onward.

In 2017, Andrea filed a complaint for partition of real property, an accounting, and declaratory relief. The pleading named Parents, her grandparents Ainslee and Lola Hogan (who gave the initial loan to Parents to purchase the Property), Union Bank, N.A., and all persons unknown claiming any legal or equitable right, title,

---

[1] Because the parties share the name last name, we refer to them by their first names. We do so for clarity and intend no disrespect.

estate, lien or interest in the Property adverse to Andrea's title, or any cloud upon her title. Gregory filed a cross-complaint for declaratory relief and to void the grant deed.

Following Gregory's request for consolidation of Andrea's partition action with his marriage dissolution action, and over Andrea's objection, the trial court consolidated the two cases. It proceeded to a bifurcated bench trial in April 2019.

Gregory stated he initiated and directed his attorney to prepare the grant deed transferring title to Andrea. He admitted it was his idea to give Andrea a one-third ownership interest. He testified he intended to give Andrea the grant deed so she could substantiate her ownership interest if confronted by any tax authorities.

Andrea's sister, Kari Hogan, testified Gregory admitted outside his lawyer's office that he was the one who decided to provide Andrea with a one-third ownership interest. This was despite his attorney's recommendation to provide her with only a 10 percent interest. Andrea and Laurie stated Gregory spoke to Andrea four or five times regarding their agreement for her to make the requested payment and all future property taxes, insurance premiums, and repair payments until the Property was sold in exchange for a one-third ownership interest.

At trial, Andrea, Parents, and Kari all testified that Andrea had been, and remains, the only one with the means to pay the property taxes, insurance premiums, repairs, and other expenses associated with the Property. Andrea made all the agreed-upon payments. Andrea estimated she spent over $75,000 on the Property from the time she obtained her one-third interest until trial. This was confirmed by copies of bank statements admitted into evidence. She testified she agreed to and made the payments as an investment, and in reliance upon her father's promise she would be a full one-third owner of the Property.

After a two-day bench trial on the partition action, the trial court ruled in favor of Andrea on the issue of ownership. It determined the grant deed was valid and that it conveyed a full one-third tenant-in-common fee interest in the Property to Andrea. It

3

ruled against Andrea regarding distribution of funds from the sale of the Property and denied her request for reimbursement of the $75,000 spent on the Property. The court concluded Andrea was only entitled to share in the appreciation that had accrued after she became an owner, "Andrea is entitled to share [one-third] of the net equity that accrued after December 8, 2014 to the date of sale." There was no evidence presented at trial Parents or Andrea intended for the grant deed to only entitle Andrea to one-third of any appreciation accruing after she obtained ownership.

However, based on the trial court's order to release the parties' valuation witnesses, no expert evidence was presented as to the value of the Property before or after the conveyance. Although the parties retained real estate valuation experts to testify at trial regarding the value of the Property, the court dismissed those experts for this phase of the trial. The only evidence presented regarding appreciation came from the parties themselves.

Andrea testified she had no personal knowledge of the value. Laurie expressed no opinion as to the fair market value of the Property in 2014, but testified that at the time of trial, she believed the Property was worth $1.2 million. She also testified it was her opinion Andrea was entitled to one-third of the net proceeds of the sale of the Property. Laurie stated, "If she didn't step forward, we wouldn't have gotten anything."

Gregory testified the Property had not appreciated in value between the time the grant deed was recorded and the time of trial. He stated the fair market value at the time of trial was $1.4 million. His opinion was based on his research of comparable real estate in the Lemon Heights area. Gregory believed the fair market value had also been close to $1.4 million in 2014 because the realtor had suggested listing it at $1.385 million and he had, again, engaged in independent research confirming the price of comparable properties and sales on the Internet.

The trial court conducted its own research of the Property that was not presented as evidence at trial. "For the record I want to tell the lawyers something I just

4

did. I culled up my Internet service. I dialed in through Zillow [the Property's address]. I wanted a visual of this home that [Gregory] says did not appreciate. It's a four-bedroom, three-bath home. It's 3,791 square feet. . . . [¶] It seems like a one-story home from its picture. It looks like a very lovely home. I'm also familiar with Lemon Heights and that neighborhood, and it is a nice neighborhood and very desirable in 2014 and today." The court further noted its previous education, training, and experience as a real estate agent and broker. It remarked it would "be very surprised to learn that the home has not appreciated from 2014 to 2019." The court alluded to ordering an appraisal to determine the value in 2014 and the current value, but we see no evidence this actually occurred.

In its final statement of decision, the court concluded as follows: "Andrea's share of net equity from December 8, 2014 and forward was bargained for proportional to the risks she understood, and Andrea is entitled to that growth in value notwithstanding the growth in value was due not to her direct efforts, [but] collateral to [the] robust real estate market (with escalating property values) and the uniqueness of this attractive single family home in Lemon Heights, an up-scale community nestled in the Tustin Hills."

The court further determined prior to this litigation, Gregory "never claimed the deed was incorrect, invalid and along the way, Gregory accepted Andrea[s] financial help." It stated Gregory "testified that he signed the grant deed 'freely and voluntarily' and understood that the document would show that Andrea was a 1/3 owner of the . . . Property" and that he "understood the legal effect of that document and that recorded deed changed title by adding Andrea to title, now a 1/3 owner." It further adjudged Gregory's position at trial as "absurd" and found him "not credible."

The court concluded, "Under principals of equity, the court's ruling reconciles and matches Andrea's risk/reward to the date of her 1/3rd ownership and forward, not retroactively. For Andrea to demand more is a huge overreach and an

5

absurd result. For Gregory to insist Andrea is not entitled to any share of the equity is a huge overreach and an absurd result."

By stipulation of the parties, at the conclusion of trial, the court ordered the Property sold immediately. After trial, the Property sold for $1,275,000.[2]

## DISCUSSION

Andrea asserts the trial court erroneously and inequitably deprived her of any interest in the Property when it determined the intent of the parties was to share only prospective equity with her. We agree.

I. *Standard of Review and Underlying Legal Principles*

We review the trial court's interlocutory judgment of partition for abuse of discretion. (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.) "Under that standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." [Citation.]' . . . '[A] disposition that rests on an error of law [also] constitutes an abuse of discretion. [Citations.]' [Citation.]" (*Ibid.*)

"'"An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law. '"The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' [Citations.]" [Citation.] A decision "that transgresses the confines of the applicable principles of law is outside the scope of discretion' and is an abuse of discretion. [Citation.]' [Citation.]" (*Kayne v. The Grande Holdings Limited* (2011) 198 Cal.App.4th 1470, 1474-1475.)

---

[2]        See request for judicial notice argument below.

Partition is the legal procedure utilized to segregate and terminate common interests in the same parcel of real property. (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404-1405.) Code of Civil Procedure section 872.720, subdivision (a), governs this process, advising that "[i]f the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property . . . ." (Code Civ. Proc., § 872.720, subd. (a).) The order of partition "shall order that the property be divided among the parties in accordance with their interests . . . as determined in the interlocutory judgment." (Code Civ. Proc., § 872.810.)

II. *Analysis*

The court properly found the "language of the deed was clear," establishing Andrea as holding a one-third interest in the property. Perplexingly, notwithstanding the clear evidence of Andrea's rights to share in one-third of the property, the court then went on to unequally distribute the net proceeds of the sale, ultimately leaving Andrea with nothing. Despite finding the evidence at trial "overwhelming" establishing Andrea's one-third ownership interest, the court somehow also found that the evidence "overwhelmingly" established Parents intended to share only *prospective* equity with Appellant in exchange for her financial support. However, there was no credible evidence the parties intended for or even discussed Andrea would receive less than a full one-third interest.

Indeed, the statement of decision does not identify or rely upon a single piece of evidence in support of this finding. With no evidence to back its decision, the trial court surprisingly held the evidence presented did not support Andrea's entitlement as a one-third owner to one-third of the net sales proceeds of the Property.

The court determined, "Andrea failed to prove under any fact, equitable principles, or law, a right to 1/3 of the total property equity." The record belies this assertion. The strongest evidence in support of her right to one-third of the total property

7

equity is the grant deed. It demonstrated Parents knowingly conveyed an *unrestricted* one-third ownership interest in the Property to Andrea. Testimony also demonstrated the Property did not appreciate between December 2014 and the trial date.

The court asserted Andrea's share of net equity, only from 2014 forward, was "'bargained for.'" Not so. There was no evidence introduced to support a finding that Gregory and Andrea ever agreed she would only receive one-third of the equity arising only after the grant deed was recorded.

The evidence instead demonstrated Parents could not afford the expenses of the Property, Gregory's parents were unwilling to provide further funds, and that the only way for Parents to keep the Property was to enlist Andrea's help. Moreover, the court found Gregory to be not credible and properly disregarded his testimony that Andrea never expected to receive any financial interest in the home.

Ultimately, while we disagree with the trial court's assertion Andrea's share in prospective equity was somehow bargained for, we recognize the court's broad discretion in partition matters. We reverse, however, because the trial court relied on its own research and experience to establish the Property appreciated in value from 2014 to the time of trial. The court released the parties' real estate valuation experts. There was no testimony or other evidence demonstrating the Property appreciated in value after Andrea became an owner. To the contrary, testimony by the parties demonstrated the Property did not appreciate. The court's independent research into the value of the Property did not constitute evidence.

The court stated the Property "seems like a one-story home from its picture. It looks like a very lovely home. I'm also familiar with Lemon Heights and that neighborhood, and it is a nice neighborhood and very desirable in 2014 and today." The court's conclusion there was "growth in value" due to a "robust real estate market (with escalating property values) and the uniqueness of this attractive single family home in Lemon Heights, an up-scale community nestled in the Tustin Hills" was not based upon

8

any evidence at trial. Instead, it appeared based upon its independent Internet research on the Zillow Web site. And, as it turned out, the court's independent real estate research was wrong.

The Model Code of Judicial Conduct, Model rule 2.9(C) specifically precludes a judge from investigating facts independently and requires that it only consider evidence presented and facts that may be judicially noticed. (ABA Model Code of Jud. Conduct, rule 2.9(C).) There is no indication the information obtained by the court's research was subject to such judicial notice. (See Evid. Code, § 455, subd. (b).) Additionally, the court's apparent reliance on Zillow's value of the Property is particularly troublesome. As the United States Bankruptcy Appellate Panel of the Ninth Circuit observed, "The Zillow 'Zestimate' is particularly questionable. As Zillow itself says: The Zestimate is not an appraisal and can't be used in place of an appraisal. It is a computer-generated estimate of the value of a home today, given the available data. [¶] The Zestimate should not be used as the basis of any specific financial transaction because data sources may be incomplete or incorrect. The Zestimate is a starting point and does not consider all the market intricacies that can determine the actual price a home will sell for. [Citation.]" (*In re Ogletree* (B.A.P. 9th Cir., 2020, No. 19-50392-SLJ) 2020 WL 6557434, at *5, fn. 5.)

The court's determination Andrea would be adequately compensated for her investment by the appreciation from December 2014 forward was pure speculation and was not based on the evidence before it. Accordingly, the court's finding that Andrea failed to present facts to justify her entitlement to all rights associated with a tenant-in-common interest was not a conclusion reached after weighing credible evidence, nor was it supported by law. The court's statement that Andrea's claim was unsupported by facts is entirely contradicted by the record. Furthermore, the court's legal error resulted in a miscarriage of justice. It entirely deprived Andrea of *any* interest in

9

the property and deprived her of reimbursement of the approximately $75,000 she had spent on the Property.

We acknowledge the court's inherent powers to do equity in a partition action. As explained above, the court's determinations were based upon mere speculation instead of facts in evidence. In any event, we address the issue of equity as a guiding principle for the trial court on remand. The court apparently sought to do equity by giving Parents a larger share of the property because they had owned it longer than Andrea. In so doing, however, it prevented Andrea from sharing in *any* of the equity.

The court may apportion proceeds in an equitable manner. Often this means determining the ownership rights and ordering an accounting. Any such determination, however, must be supported by admissible evidence, not speculation. Here, the ownership interests are unequivocable. It is undisputed Andrea, Gregory, and Laurie each own one-third of the Property. Based upon this record, we see no reason why the court should ignore the contractually agreed upon rights of the parties on remand. If anything, it appears equity concerns weigh in favor of Andrea based upon her significant contributions to the property. The trial court's purportedly equitable remedy providing Andrea with nothing and denying her request for reimbursement of the approximately $75,000 spent on the Property resulted in a miscarriage of justice.

Finally, we reject Respondents' attempts to apply legal principals applicable to property ownership and apportionment in dissolution actions. Those are irrelevant to this partition as Andrea is obviously not a spouse or party to the underlying dissolution action.

III.  *Request for Judicial Notice*

Pursuant to Rule 8.252(a) of the California Rules of Court and Evidence Code section 459,[3] Andrea requests we take judicial notice of the grant deed from the posttrial court ordered sale of the Property.  Respondents object.  We grant Andrea's request for judicial notice.

Under section 452, subdivision (h), we may take judicial notice of, "Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." This includes recorded deeds.  (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 977.)  Under section 459, subdivision (d), we may take judicial notice of evidence not presented at trial, but which is appropriate for judicial notice, as long as each party is afforded a reasonable opportunity to "meet" such evidence before notice of the matter is taken.

The grant deed is subject to judicial notice under section 452, subdivision (h), because it is "not reasonably subject to dispute" and is "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  The official records of the Orange County Clerk-Recorder meet this requirement. Additionally, the grant deed is relevant and critical to this appeal.  It demonstrates the trial court's evidentially unsupported presumption the Property appreciated in value between 2014 and the time the property was sold was incorrect and without any factual basis.  The grant deed provides evidence the Property did not appreciate during the relevant timeframe based on the documentary transfer sales tax being extrapolated to show the purchase price of $1,275,000.[4]  We are satisfied the briefing on this issue

---

[3] All further statutory references are to the Evidence Code, unless otherwise indicated.

[4] This sale price can be extrapolated from the grant deed based upon the documentary transfer tax paid, which was $1,402.50.  Transfer tax is $0.55 for each five

11

provided each party a reasonable opportunity to "meet" the information, as required by section 459, subdivision (d).

## DISPOSITION

We reverse the trial court's interlocutory judgment and remand the matter for further proceedings. On remand, the trial court must reconsider its decision awarding unequal distribution of proceeds from the Property. The court may not redetermine ownership rights on remand, as the court previously made a factual finding supported by admissible evidence, and parties do not dispute, that Parents and Andrea each share one-third ownership in the Property. The request for judicial notice is granted. Andrea shall recover her costs on appeal.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

hundred dollars. (Rev. & Tax. Code, § 11911.) As such, $1,275,000 divided by $500 equals $2,550. $2,550 multiplied by $0.55 equals $1,402.50, which is the amount of transfer tax identified on the grant deed.