Filed 2/17/26  Bel Air K.A. v. 5 Sites CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| BEL AIR K.A., LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>5 SITES, INC. et al.,<br><br>    Defendants and Appellants. | B339859<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV14593) |

APPEAL from an interlocutory judgment of partition of the Superior Court of Los Angeles County.  Gail Killefer, Judge. Affirmed.

Vivoli Saccuzzo and Michael W. Vivoli for Defendants and Appellants.

Neufeld Marks and Paul S. Marks for Plaintiff and Respondent.

_____

**SUMMARY**

Defendants appeal from an interlocutory judgment for partition of real property, a commercial building in downtown Los Angeles, owned by three parties: plaintiff Bel Air K.A., LLC (Bel Air) (24.5 percent) and defendants 5 Sites, Inc. (5 Sites) (51 percent) and Olive M.V., LLC (Olive M.V.) (24.5 percent) (collectively, defendants).[1]  The central issue at trial was whether plaintiff waived its right to bring a partition action, either expressly, by virtue of a provision in a partnership agreement, or impliedly, by virtue of an oral agreement.

At trial, defendants produced only an unsigned copy of the partnership agreement.  After trial, defendants found a copy signed on behalf of Bel Air but no counterparts signed by defendants.  The trial court refused to reopen the trial to admit evidence that should have been presented at trial.  The trial court also rejected defendants' claim that plaintiff impliedly waived its right to partition based on an oral agreement, finding the alleged agreement did not comply with the statute of frauds.

The trial court concluded defendants did not meet their burden of proving by clear and convincing evidence that plaintiff waived its right to partition.  The court also noted it was not persuaded by a preponderance of the evidence at trial that plaintiff waived its right to partition, either based on the unsigned agreement or the oral agreement.

We affirm the interlocutory judgment of partition.

---

[1]     Atlantic Management, Inc., the management entity of 5 Sites, Inc., is also a named defendant in this case, but plays no role in the issues on appeal.

2

## LEGAL AND FACTUAL BACKGROUND

### I. *The Legal Principles*

"A co-owner of real or personal property may bring an action for partition." (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493, citing Code Civ. Proc., § 872.210 (*LEG Investments*).) " 'Partition is a remedy much favored by the law. The original purpose of partition was to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land. An additional reason to favor partition is the policy of facilitating transmission of title, thereby avoiding unreasonable restraints on the use and enjoyment of property.' " (*LEG Investments,* at p. 493.) " '[A]lthough the action of partition is of statutory origin in this state, it is nonetheless an equitable proceeding . . . .' " (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596–597.)

"A co-owner of property has an absolute right to partition unless barred by a valid waiver. (Code Civ. Proc., § 872.710, subd. (b).) '[T]he right of partition may be waived by contract, either express or implied.' " (*LEG Investments, supra,* 183 Cal.App.4th at p. 493.)

### II. *The Factual Background*

The property at issue is a 72,000 square foot, 10-story commercial building at 643 South Olive Street in Los Angeles. The parties refer to the property as the Olive Center. At the time of trial, the individuals acting on behalf of the parties were:

(1) Mehran Haghani, Bel Air's (plaintiff's) manager. Mr. Haghani's mother, Khanoum Agha Akhavar, was the 100 percent owner of plaintiff, and Mr. Haghani was manager "for an unspecified period."

(2)  Joseph Lavaei, "the partner in the building" for defendant 5 Sites.

(3)  Mehran Verdi, managing member of defendant Olive M.V.

Plaintiff, whose interest in the Olive Center was recorded on December 4, 2003, acquired its interest shortly after defendants first acquired the property.  The parties retained an attorney, E.P. Kranitz, to prepare written agreements concerning the Olive Center.  Mr. Kranitz prepared four documents: a partnership agreement, "Restrictions Regarding Real Property," a fictitious business name statement, and an attorney conflict letter.  He wrote to the Olive Center's three owners by letter dated September 17, 2004, transmitting the four documents.[2]  As to the partnership agreement, he instructed the owners that if the documents were acceptable as written, they should "[s]ign the agreement and each partner should retain a fully executed copy."  The letter also instructed the owners to "[s]ign the Restriction[s] Regarding Real Property, have your signatures notarized and then return the same to my office for recording with the Los Angeles County Recorder."

The partnership agreement included the following pertinent terms.

Section 9.B. stated: "<u>Restrictions Regarding the Property</u>.  Each Partner agrees that it will continue to hold title to its undivided interest in the Property on behalf of the Partnership and will not sell, transfer, assign or encumber said interest, or

---

[2]      The addressees of Mr. Kranitz's letter were Mr. Lavaei, Mr. Verdi, and "Mehran Akhaban."  This discrepancy in the identity of the partner for plaintiff's interest was not explained.

any part therein, without the written consent of the other Partners.  *Further, each Partner hereby waives its right to file an action to partition the Property*.  In the event a Partner shall engage in any of the foregoing, such transaction shall be null and void and, in the event that Partner should attempt to perform any of the foregoing, either of the other Partners shall have the right to enjoin such threatened action, it being agreed that such action would cause irreparable damage to the Partners and the Partnership.  *The Partners agree to cause a memorandum to be recorded with the office of the Los Angeles County Recorder setting forth the foregoing restrictions on the interest of a Partner in the Property*."  (Italics added.)

Section 28.C. stated: "<u>Counterparts</u>.  The parties may execute this Agreement in two or more counterparts, which shall, in the aggregate, be signed by all the parties and constitute one agreement.  Each counterpart shall be deemed an original instrument as against any party who has signed it."

Section 8.B. stated: "Promptly after the date the Partnership begins and after the date of any subsequent change in its membership, the Partners shall sign, acknowledge, and verify a statement of Partnership authority as provided in Corporations Code §§ 16105 and 16303, and cause it to be recorded in each county in California in which the Partnership owns or contemplates owning real property or any interest in real property.  That statement shall include a statement that any conveyance, encumbrance, or transfer of any interest in the Partnership's real property must be signed on behalf of the Partnership by all of the Partners."

III. *The Lawsuit and the Trial*

On April 16, 2021, plaintiff filed this lawsuit, alleging claims for partition by sale, an accounting, and negligent interference with prospective economic relations. The trial court resolved the negligent interference claim against plaintiff, and it is not at issue on this appeal.

At the time of trial, on June 8, 2023, no one had produced a signed copy of the partnership agreement, which plaintiff had requested in discovery. Mr. Lavaei (of Olive M.V.) had called Mr. Kranitz's office and was told Mr. Kranitz had died and "they don't have access to the files."

At trial, Mr. Haghani testified that the first time he saw the (unsigned) partnership agreement (Exhibit 55) and the letter from Mr. Kranitz was at his deposition. Specifically, Mr. Haghani testified at trial:

"Q. All right. Now, if you flip to the back of this Exhibit 55 . . . you see that there are three signature blocks, including one for this entity, 'Bel Air K.H.," as in, 'Haghani,' for example, LLC, but they are all unsigned; do you see that?

"A. Yes, sir, I see it.

"Q. Do you know whether you ever signed a version of this Partnership Agreement, whether it was this one or a different one, that might have had some add-age to it?

"A. This paper, I saw that from their lawyer in my deposition. That was the first time I saw this agreement, and I don't remember—I am sure that—that my mom signed this."

Mr. Haghani's deposition testimony was read at trial.

"Q. Do you recall after acquiring—after Bel Air acquired an interest in the Olive property, do you recall receiving a written agreement that outlined what the rights and duties would be between the owners?

"A. We looked for it. We never find anything. I thought we had something in the beginning. But all of us looked for it. They couldn't find anything.

"Q. Okay.

"A. Even for the bank that they were going to refinance, they didn't have anything.

"Q. Do you recall having seen something that you just can't recall what it was?

"A. I don't remember, but I signed it."

Both Mr. Lavaei and Mr. Verdi testified for defendants that they witnessed Mr. Haghani sign the partnership agreement. They testified that Mr. Haghani signed the agreement when the three men met at the Coffee Bean at Reseda and Ventura in September 2004. Neither Mr. Lavaei nor Mr. Verdi testified that Mr. Haghani signed his mother's name.

At the conclusion of Mr. Verdi's testimony, the trial court asked him: "You are a sophisticated investor in real estate. Why should I believe that you all signed the document and didn't keep a signed copy, with all the experience you have with the pitfalls of doing real estate deals?" Mr. Verdi answered: "I want to answer that, and I promise Mr. Lavaei, if you lose the case, I am going to find the paper because I know what to look for. Mr. Lavaei doesn't know. It is at his office. The signed paper, it does exist. [¶] . . . [¶] . . . And I know where, exactly what—which folder I put it in."

7

The trial court stated it was inclined to continue the trial for a week "because if you have a signed document, I want to see it, because that is the right thing to do." Mr. Verdi also stated that "the bank might have a copy, maybe." The court replied: "This case has been going on so long though. How come you haven't asked for it?" Mr. Verdi replied, "I got to take a day off and go to his office."

Counsel for plaintiff objected to a continuance "when it could have been done sometime since the case was filed, two or three years ago." After hearing from defense counsel, the court stated: "I think it is only fair that you do a short brief on what—if you do find it, why it should be able to be introduced and let [plaintiff's counsel] say why it shouldn't be produced, because clearly, from my perspective, I like to get things right, but I understand his point, entirely."

IV. ***Post-Trial Evidence***

One week later, on June 15, 2023, defendants lodged copies of the four documents with Mr. Kranitz's letter (this copy of the Kranitz letter was dated September 20, 2004, rather than September 17, 2004). The four documents were signed for Bel Air, purportedly by Ms. Akhavar (Mr. Haghani's mother and the 100 percent owner of Bel Air). There was a notarial certificate for Ms. Akhavar's signature, but no indication of the instrument to which the notarial certificate refers. Moreover, the notarial certificate was dated two years later, on November 14, 2006.

The four documents lodged were not signed by either of the other two parties.

## V.    *The Trial Court's Ruling*

On February 15, 2024, the trial court issued its final statement of decision, including an appendix addressing defendants' objections to its tentative statement of decision.

First, the court held that defendants had to prove that plaintiff waived its right to partition by clear and convincing evidence. The court reasoned that partition is a remedy much favored by the law, and waiver generally requires proof by clear and convincing evidence.

Second, the court addressed the express waiver in the partnership agreement.

The court was "not persuaded by clear and convincing evidence"—or by a preponderance of the evidence—that plaintiff waived its right to partition "based upon the unsigned Partnership Agreement." The court explained that the testimony of the three witnesses concerning the circumstances of the signing was inconsistent, with Messrs. Lavaei and Verdi testifying the partners signed the agreement at the Coffee Bean in September 2004 and Mr. Haghani denying any recollection of such a meeting and testifying that his mother signed the agreement.

The trial court then turned to the documents lodged within a week after the trial ended (referred to as Exhibit A), each purportedly signed by Ms. Akhavar but no one else, as described above. The court, "with further reflection," determined it could not, "in the interests of fairness, admit Exhibit A into evidence."

The court observed that the existence of the agreement was a key fact from the beginning of the case, citing the complaint; defendants' affirmative defense of waiver; and defendants' response to a special interrogatory asking for all facts supporting

their waiver defense, in which defendants "never mentioned the one sentence in ¶9B of the Partnership Agreement in which Plaintiff allegedly waived the right to partition." "More importantly," the court stated its expectation under local rules that counsel be prepared for trial, but Exhibit A "was neither exchanged nor listed on the Joint Exhibit List and was not produced by Defendants until after trial." These violations of local rules resulted in arguments over whether Ms. Akhavar's signature was binding in light of statutory provisions that only the manager may act for a manager-managed LLC; when Mr. Haghani became manager; and the lack of evidence of plaintiff's articles of organization or operating agreement. The court concluded that "[t]here was no evidence presented at trial that Mr. Haghani had the authority to sign for his mother. Had Defendants produced Exhibit A in advance of trial, both parties could have been prepared to address these issues at trial."

Further, the trial court concluded that even if the court were to consider Exhibit A, "the court could not find that Exhibit A is helpful to Defendants' case for at least three reasons: 1) it was not signed by all the partners; 2) there was no evidence that the partners complied with the terms of the Partnership Agreement; and 3) Exhibit A contradicts Defendants' argument and testimony that Mr. Haghani signed the Agreement at a Coffee Bean or anywhere else." Among other things, the trial court observed that paragraph 28.C required full execution of the agreement, but the evidence did not include counterparts signed by the three parties; paragraph 8.B required the partners to sign, acknowledge, and verify a statement of partnership authority and record it with Los Angeles County, but there was no evidence that was done; there was no evidence the partners complied with

10

paragraph 9.B, which required the recording of a memorandum of the restrictions on the partners' interests in the property with the Los Angeles County Recorder; and "the grant deed shows the three parties owned the Olive Center as a tenancy in common, not as a partnership." The court concluded there "was no evidence a legal partnership was ever formed. The court cannot find, on the evidence presented, that the Partnership Agreement is a viable and binding document."

The trial court also addressed defendants' claim of an implied waiver of the right to partition, based on an alleged oral agreement that major decisions would require the consent of 5 Sites (the 51 percent owner) and at least one of the 24.5 percent owners. Both Mr. Lavaei and Mr. Verdi so testified, but Mr. Haghani acknowledged such an agreement only "as to the 'small stuff' such as 'granting, leasing, buying tiles.' " The trial court rejected defendants' claim of implied waiver "because it does not comply with the statute of frauds."

Finally, the court found there was no equitable reason to deny plaintiff the right to partition.

On April 11, 2024, the court entered the interlocutory judgment of partition. Defendants moved for a new trial. The court denied the new trial motion on July 10, 2024. Defendants filed a timely notice of appeal.

## DISCUSSION

We review an interlocutory judgment of partition for abuse of discretion. (*Cummings v. Dessel, supra,* 13 Cal.App.5th at p. 597.) As indicated at the outset, we find no abuse of discretion here.

11

Defendants proffer several arguments, but none shows an abuse of discretion by the trial court.

First, defendants argue there are no cases that refer to the burden of proof of waiver of the right to partition as "clear and convincing" evidence. That is so, but defendants cite no cases where the burden of proof was an issue in a partition case. We are inclined to agree with the trial court: waiver of rights in other contexts requires clear and convincing evidence (e.g., *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31), and courts describe the right to partition as "much favored" by the law (*LEG Investments, supra,* 183 Cal.App.4th at p. 493). But we need not decide that issue, because the court also stated that defendants did not prove, by a preponderance of the evidence, that plaintiff waived its right to partition with an oral agreement, and likewise it was "not persuaded, by a preponderance of the evidence, that Plaintiff waived its right to partition the Property based upon the unsigned Partnership Agreement." We see no abuse of discretion under either standard.

Second, defendants insist the evidence presented at trial established plaintiff's waiver of its right to partition. They recite at length the testimony of Mr. Lavaei and Mr. Verdi about the "two out of three" oral agreement for "major decisions" that Mr. Lavaei discussed with Mr. Haghani "[m]ore than a hundred times." Defendants also cite Mr. Lavaei's testimony about the written agreement, that "both he and Mr. Verdi witnessed Mr. Haghani sign the [partnership] agreement in their presence." These arguments do not advance defendants' position.

Defendants apparently fail to understand that the trial court was not obliged to credit the testimony they cite, either about the oral agreement or the testimony that Mr. Lavaei and

12

Mr. Verdi watched Mr. Haghani sign the partnership agreement. As the trial court observed, "Exhibit A [the documents lodged after trial] did indeed create a surprise when it contained not Mr. Haghani's signature, as Defendants testified at trial they watched him sign the document, but rather his mother's signature." We cannot fault the trial court for concluding that defendants "argued repeatedly, at trial and in their Objections, that Mr. Haghani signed the agreement," but "[t]hat fact was not established at trial."

Third, defendants argue they were "legally entitled" to present Exhibit A [the agreement signed by Bel Air] as "impeachment evidence" after Mr. Haghani denied signing the agreement at trial, and the trial court abused its discretion "by robbing [defendants] of that opportunity to pursue and reveal the truth underlying Bel Air's waiver of any right to partition." This is a specious claim. Defendants cite no authority for their claim of an "absolute right" to the admission of evidence they had in their possession but failed to present at trial. There was no error in the trial court's refusal to "reopen the trial to give Defendants an opportunity to retry the case on a different set of facts."

Fourth, defendants contend the trial court erred by ordering partition over their objections "given undisputed evidence of its unfairness." (See *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1015 ["In addition to the limitation on the right of partition derived from express and implied waiver by agreement, there is an even wider and more general limitation. This limitation subjects the right of partition to the 'requirement of fairness.' "].) In *American Medical,* it was "uncontroverted that defendants were persuaded to invest on the premise that there would be a long-term lease of the real

property which would assure a secure and permanent source of income to them during the life of the lease." (*Id.* at p. 1016.) This is not such a case.

Defendants cite the testimony of Mr. Lavaei to the effect that "now would be a bad time for all of the co-owners to sell this property." This was because of the necessity for a costly seismic retrofit of the building, changes in the market for office buildings, and unfavorable developments in the finance market. The trial court considered Mr. Lavaei's testimony, but stated: "The court must also consider, however, the testimony of Mr. Haghani, who was unhappy with his relationship with the two other owners and the Property. He testified to mismanagement on Defendants' part, unapproved and uneven distributions, and a failure to provide Plaintiff with financial records. . . . He also testified that Defendants wrongfully used money from the property for investing in another property."

The court concluded that, "[w]ith this record, the court does not find an equitable reason to deny Plaintiff the right to partition." We detect no abuse of discretion in that conclusion. (Cf. *De Roulet v. Mitchel* (1945) 70 Cal.App.2d 120, 124 [case with no issue of waiver; "[t]he only indispensable requirement to [an award of partition] is that a clear title be shown, and in no event is a partition to be denied because it will result in financial loss to the cotenants."].)

Finally, defendants say that a new trial is warranted, but offer no analysis and no arguments other than those we have already rejected.

14

## DISPOSITION

The interlocutory judgment of partition is affirmed. Plaintiff shall recover costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.

SCHERB, J.