Filed 5/13/24  Via Appia v. OP Development CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VIA APPIA, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>OP DEVELOPMENT, INC. et al.,<br><br>    Defendants and Respondents. | F084595<br><br>(Super. Ct. No. 10684)<br><br>**ORDER DENYING REHEARING AND MODIFYING OPINION** |

It is ordered that the opinion filed herein on April 18, 2024, be modified as follows:

1.  On page 31, the second full paragraph beginning "Here we consider Via Appia's" is deleted and the following paragraph inserted in its place:

> Here we consider Via Appia's argument that OPD "presented no evidence that a proportional division could not be made based on current usage and current market value."  First, to the extent the argument is based on "current usage" alone, it fails because current usage alone is not the correct legal basis for determining whether the property's value can be equitably divided using partition in kind.  Second, with respect to "current market value," which in Via Appia's view is derived from current usage and current status, we reject this view because, in the circumstances of this case, it is unduly restricted to future development based on current land use regulations.  (See pt. VI.D., *post*.)  Third, assuming Via Appia has taken

what we regard as the correct view of current market value—that is, a view in which the market takes into account the possibility the current land use regulations will be revised and expand the Property's potential for development—then Via Appia's argument fails because there is evidence in the record that would be difficult to create subparcels that proportionately allocate the Property's value derived from potential future development. The evidence shows there are several factors making it difficult to predict how that development will be dispersed across the Property and what portions will increase in value most from the development. This uncertainty, in turn, means any division of the Property at this point would be unlikely to equitably apportion the aggregate current market value of the Property into a two-thirds and one-third share. Consequently, based on the record presented, we conclude a reasonable trier of fact could find OPD carried its burden of proving a partition by sale was more equitable than physically dividing the Property.

2. On page 33, the following section is added before the **DISPOSITION:**

IV.    PETITION FOR REHEARING

Via Appia filed a petition for rehearing contending the original opinion contains two material omissions and four misstatements or mistakes of law. Via Appia also contends we created two theories that would justify a reversal with directions for entry of a judgment for partition in kind; Via Appia did not develop these theories; and, therefore, Via Appia did not have an opportunity to address the theories. To address this latter contention, we set forth some basic principles governing petitions for rehearing.

A.    <u>Standard for Obtaining a Rehearing</u>

Government Code section 68081 defines when a reviewing court is required to grant a rehearing petition: "Before the Supreme Court, a court of appeal, or the appellate division of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an *issue which was not proposed* or briefed by any party to the proceeding, the court shall afford the parties an *opportunity* to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party." (Italics added.)

In *People v. Alice* (2007) 41 Cal.4th 668 (*Alice*), our Supreme Court explained the application of Government Code section 68081 and the meaning of the italicized statutory terms.

"[Government Code s]ection 68081 does not require that a party actually have briefed an issue; it requires only that the party had the opportunity to do so.  By requiring the parties to file opening and responding briefs, the California Rules of Court automatically give the parties the opportunity to brief every issue that is raised in the appeal.  (Cal. Rules of Court, rule 8.200(a)(1).)  Further, we hold that this also gives the parties the opportunity to brief any issues that are fairly included within the issues actually raised."  (*Alice*, *supra*, 41 Cal.4th at p. 677.)

Expanding on what it meant by an opportunity to brief an issue, the court stated that "the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of [Government Code] section 68081."  (*Alice*, *supra*, 41 Cal.4th at p. 679.)  Examples of issues fairly included within the appellant's claims of trial court error are the proper standard of review and justiciability, which are present in every case.  (*Id*. at p. 675 [standard of review]; *Save Laurel Way v. City of Redwood City* (2017) 14 Cal.App.5th 1005, 1015, fn. 9 [justiciability]; see *Church Mutual Ins. Co., S.I. v. GuideOne Specialty Mutual Ins. Co.* (2021) 72 Cal.App.5th 1042, 1055, fn. 2 [existence of agency relationship fairly encompassed in the main issue raised in the appeal].)  Consequently, an issue is "proposed" for purposes of Government Code section 68081 when it is fairly included or encompassed in the broader issues raised in the appeal.

### B.     The Two Theories Were Fairly Included in the Issues Raised

Like issues relating to the standard of review and justiciability, we conclude the issue of the type of appellate relief appropriate for a particular type of trial court error is present in every case.  The types of relief that may be granted in appeals are addressed in two statutory provisions. Section 43 provides that a court of appeal "may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had."  Section 906 defines the powers of a reviewing court in a similar way. On an appeal from a judgment, the reviewing court "may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had."  (§ 906.)

Based on the different types of appellate relief available, we conclude it is incumbent upon appellants to demonstrate why the relief they request is appropriate in the circumstances of their case.  In short, not every trial court error that is shown to be prejudicial warrants entry of judgment in favor of the appellant.  For example, in *In re Marriage of Morton* (2018)

3.

27 Cal.App.5th 1025, this court concluded the trial court committed legal error in failing to make mandatory findings about the application of a Family Code attorney fees provision to the facts before it. (*Id*. at p. 1053.) We explicitly addressed how that error "affects the appellate relief granted by this court." (*Ibid*.) We concluded the record compelled the findings specified in the statute and those findings made an award of attorney fees mandatory. As a result, we remanded for the trial court to determine the amount of the fees to be awarded. (*Id*. at p. 1054)

Here, we conclude the two theories of trial court error identified in part III.C. of the opinion as justifying the relief sought by Via Appia were fairly included in the issues raised by Via Appia. Thus, for purposes of Government Code section 68081, the theories were "proposed," and Via Appia was afforded an opportunity to address them in its opening and reply briefs. Indeed, the first theory that a purported finding about current use justified entry of a judgment for partition in kind was discussed by Via Appia. To the extent that Via Appia did not provide argument, authority and analysis demonstrating that its other claims of trial court error warranted the entry of a judgment for partition in kind, we conclude a rehearing with supplemental briefing is not required.

C.     The Absence of a Finding about the More Equitable Manner of Partition

Via Appia contends we did not address or resolve its argument that the trial court erred when it ordered a partition sale without making the statutorily required determination "that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property." (§ 872.820, subd. (b).) We disagree.

In part II.B.2., *ante*, we explained that the failure to provide a statement of decision is ordinarily remedied by remanding for the issuance of statement of decision, provided the judge who conducted the trial is available. Assuming the "more equitable" determination is an ultimate fact for which an explicit finding is required, the absence of such a finding in this case would be remedied in the same way—that is, remanding to the trial court to complete the process set forth in Rule 3.1590, which would result in a statement of decision containing the omitted finding on that ultimate fact. (See *Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 [in rendering a statement of decision, a trial court is required only to state its findings of ultimate, rather than evidentiary, facts].) Thus, Via Appia's "argument that the trial court erred when it ordered partition [by] sale without making the statutorily required determination" was not discussed at length because the proper appellate

4.

remedy for such an error was a remand for the issuance of a statement of decision pursuant to the process set forth in Rule 3.1590. (See pt. II.B.2., *ante*.) This explains why the claim of error based on an omitted finding was not included in the theories addressed in part III.C. of this opinion. Those theories of trial court error, if established, would require the entry of a judgment of partition in kind.

### D. Role of Current Use and Current Status

Via Appia contends our decision is based "on stating that [Via Appia's] position is that the property should be divided based on its current use for cattle grazing" and this characterization deprives it of "its argument that the property should be divided based on its present circumstances: rural undeveloped land now used for grazing." First, we addressed "current *use*" in parts III.B. and III.C.2. because Via Appia's opening brief employed that term in section E of its argument.

Second, we addressed what Via Appia called "current *status*," which we interpreted as the Property's current use *and* its development potential based on its current zoning and land use designations. We adopted this interpretation because it was the approach to value taken by Sattler, one of Via Appia's expert witnesses. For clarification, we rephrase our earlier conclusions of law as including the principle that the concept of "value" used to determine which manner of partition is more equitable should not be limited to value based on potential development under *current* zoning and land use designations. "Value" for purposes of section 872.820 and the *Butte Creek* tests also should include the possibility that the land use restrictions will be modified to allow more intensive development in the future. Although the evidence is conflicting, substantial evidence supports the finding that this possibility is not so remote as to justify its exclusion from the determination of "value" for purposes of the *Butte Creek* tests.

The parties have cited, and we have located, no published decision that explicitly identifies the issue of whether the potential for development that affects the Property's value must be limited to the development allowed under currently existing zoning and land use designations without regard for the possibility that those land use regulations could be modified. Therefore, our determination of this specific legal issue has not been adopted or rejected in existing case law. Nonetheless, the parties have briefed the issue of the appropriate legal standard for determining the relevant "value" for applying the *Butte Creek* tests.

5.

Except for the modifications set forth, the opinion previously filed remains unchanged.  There is no change in the judgment.

Appellants' petition for rehearing is denied.


                                                                    FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


DE SANTOS, J.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VIA APPIA, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> OP DEVELOPMENT, INC. et al., <br><br> Defendants and Respondents. | F084595 <br><br> (Super. Ct. No. 10684) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Mariposa County.  Michael A. Fagalde, Judge.

The Ware Practice Group, Mindy Ware and James Ware for Plaintiff and Appellant.

Wanger Jones Helsley, Amanda G. Hebesha, Patrick D. Toole, John P. Kinsey, and Kathleen D. DeVaney for Defendants and Respondents.

-ooOoo-

Via Appia, LLC (Via Appia), owner of an undivided one-third interest in a 781.6-acre parcel of grazing land located in Mariposa County, filed a partition action eventually requesting the parcel be physically divided between its two owners.  After a bifurcated

court trial on the partition cause of action, the trial court entered an interlocutory judgment of partition by sale. Via Appia appealed, contending the court should have ordered a physical division of the parcel, which is the statutorily preferred manner of partition. (See Code Civ. Proc., §§ 872.810 [physical division], 872.820 [sale and division of proceeds].)[1]

A threshold procedural issue is whether the trial court's violations of section 632 and California Rules of Court, rule 3.1590,[2] relating to statements of decision, prevent the doctrine of implied findings from being applied to the interlocutory judgment. The court violated those provisions by filing the judgment without announcing a tentative decision, without issuing or requiring the preparation of a proposed statement of decision or a proposed judgment, and without affording the parties an opportunity to object to the judgment before it was entered. We conclude the doctrine of implied findings does not apply because (1) the premature filing of the judgment prevented Via Appia from taking the procedural steps ordinarily required to avoid application of the doctrine and (2) Via Appia brought the violations to the attention of the trial court shortly after the judgment was filed.

On the merits, Via Appia contends this court should reverse the judgment of partition by sale and, instead of remanding for issuance of a proposed statement of decision, direct the entry of a judgment of partition in kind. By adopting this all-or-nothing appellate strategy, Via Appia has abandoned the intermediate remedies of remanding for (1) further proceedings that comply with Rule 3.1590, (2) a reconsideration of the merits, or (3) a new trial. Thus, Via Appia has set itself the difficult task of demonstrating that, based on the appellate record, the only appropriate

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

[2]    Undesignated references to a numbered "Rule" are to the California Rules of Court.

outcome is partition in kind.  Here, we consider two ways Via Appia could establish it is entitled to partition in kind.

First, Via Appia could take the trial court's explicit findings of fact and demonstrate that applicable rules of law require a partition in kind.  In other words, Via Appia could show the trial court misapplied the law to the facts and, moreover, the facts found are sufficient to establish partition in kind is required.  As explained below, we do not interpret the court's discussion of a hypothetical situation where the land was to be used solely for grazing cattle to be a finding of fact.  Furthermore, the findings actually made by the trial court do not require a partition in kind.

Second, Via Appia could demonstrate that the other owner failed to carry its burden of proving "that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property."  (§ 872.820, subd. (b).)  If the evidence presented was such that no reasonable trier of fact could find division by sale was more equitable, then there would be no point in remanding for further proceedings.  In that situation, the only appropriate outcome would be a judgment of partition in kind.  Based on our review of the record, we conclude it contains substantial evidence that would support a finding that a sale is more equitable than physically dividing the parcel.  As a result, Via Appia has not demonstrated that it is entitled to a judgment of partition in kind.

We therefore affirm the interlocutory judgment of partition.

## FACTS

Appellant Via Appia is a California limited liability company formed in the early 2000's by Frank Berlogar and Pete Ruggeri.  Berlogar is a managing member of the company.  He obtained a degree in civil engineering in 1967, has practiced geotechnical engineering since, and has experience in real estate investment.  Berlogar's resume states he also has provided expert witness testimony and forensic investigations for dozens of residential, commercial, industrial and road projects.

Ruggeri received a degree in civil engineering in 1970.  He worked for the Alameda County Flood Control and Water Conservation District until 1977, then worked for civil engineering firms until he started his own company in 1995.  Ruggeri retired from that firm in 2014 and now does consulting and expert witness work.  His resume states he has over 50 years of experience in civil engineering, land planning, land surveying, and right-of-way engineering and he specialized in public works and land development projects.  During oral argument, counsel for Via Appia confirmed that Berlogar and Ruggeri are still Via Appia's two principals, correcting the failure to identify any owner in its initial and supplemental certificates of interested entities or persons.  (See Rule 8.208 [certificate of interested entities or persons].)

In 2005, Via Appia acquired an undivided one-third interest in a 781.6-acre parcel located at 5877 Highway 49 North in Mariposa (APN 012-120-007) and commonly known as the Princeton Ranch (the Property).  The Property is irregularly shaped and the northern most part of its western boundary abuts Highway 49 across from the Mariposa-Yosemite Airport.  Via Appia paid $1,777,000 for its one-third interest in the Property, which is nearly $2,300 per acre.  Berlogar and Ruggeri felt the Property had development potential and they intended to enhance its value by obtaining entitlements before selling it to a buyer who would undertake the physical development of the Property.

Later in 2005, respondent OP Development, Inc. (OPD) acquired the remaining two-thirds interest in the Property and a 100 percent interest in an adjacent 200-acre parcel (APN 012-140-013).  The president of OPD, respondent Gregory J. Opinski, is a general contractor and land developer.  Opinski testified the purchase price per acre for the Property was around $6,500.  OPD's response to an interrogatory stated it paid $4,825,000 for its two-thirds interest in the Property and its full interest in the adjacent 200 acres, and the purchase price was not split between the two parcels.

The Property's primary use before 2005 and at all times during this litigation has been cattle grazing. At the time of trial, a rancher was paying $10 per acre per year to rent the Property.

In the 1990's, previous owners of the Property proposed a development called Las Mariposas that included an 18-hole golf course, club house, hotel, commercial space, and residential housing. A final environmental impact report (EIR) dated May 29, 1994, was prepared for the project. The project received the support of the county planning commission, but was voted down by the board of supervisors.[3]

The Property's topography and other physical characteristics need not be set forth in detail in this unpublished opinion because the parties and their attorneys are acquainted with those facts. The Property's current land use restrictions play a role in the parties' arguments on appeal and, therefore, we provide a brief overview of those restrictions. The Mariposa County General Plan designates the Property's land for residential land use and natural resources land use. The Property has five different types of zoning—mountain general, mountain home, rural residential and town planning area along with an airport overlay. Sarah Williams, the county's planning director since 2012, testified a town planning area is a location in the county that the board of supervisors has determined is appropriate for commercial, light industrial, and all levels of housing development, including high-density housing. She also explained that the general plan adopted in 2006 is more restrictive than the zoning and allows parcels only as small as five acres on the portions of the Property zoned town planning area, rural residential, and mountain home. The mountain general designation allows one unit per 40 acres. With respect to future development, Williams testified that in her opinion there is a need for high-density housing in Mariposa County; that the Property is suitable for the

---

[3] The final EIR is a source of information about the Property, its surroundings, and applicable land use and zoning designations that appraisers and experts in this case have reviewed.

5.

development of high-density housing, but significant entitlements and permitting would need to be completed to enable construction of high-density housing on the site; and that the county would be supportive of that kind of development.

The parties attempted to sell the Property before this litigation began. In 2010, after the economic downturn of 2008, the parties jointly listed the Property for sale with an asking price of approximately $10 million (over $12,000 per acre). They believed listing it for sale jointly would result in a higher sale price than separately listing their fractional interests. No offers were received.

In January 2015, Via Appia and OPD agreed to jointly list the Property for sale at $19.65 million (approximately $25,000 per acre) and signed an exclusive representation agreement with a broker, Marcus & Millichap Real Estate Investment Services. The parties concurrently agreed to restart efforts to obtain entitlements and engaged consultants to work on that process.

The attempted sale of the Property was affected by Opinski's divorce proceeding. Opinski testified that his ex-wife filed a motion asserting he did not have the authority to sell certain properties and, as a result, he asked Marcus & Millichap to pull the Property off the market for a short time. Opinski testified that after the judge handling the divorce proceeding heard his wife's motion, the Property was relisted. Opinski also testified he thought it was true that in May 2015, he told Marcus & Millichap that he would not respond to written offers on the Property due to his divorce. Additional issues relating to the Property arose, which caused the parties' working relationship to deteriorate. This litigation started shortly thereafter.

## PROCEEDINGS

Via Appia filed a complaint for partition of real property against OPD, the State of California, and three utility companies in August 2015. Via Appia alleged that partition by sale would be more equitable than division in kind. On information and belief, Via Appia also alleged "that the cost and expense to partition the Property in kind outweighs

6.

the advantages of completing such a division, division of the property may dramatically decrease the value of the Property and will require the involvement of third parties in order to complete a proper division."

Via Appia filed a first amended complaint 40 days later. The main modification changed the relief requested to partition in kind. During the trial, Berlogar testified that when the action was filed, it was not his intention to seek a sale of the property. He stated: "At the time I thought partition was partition. There would be some division of the land and Opinski would get some and we would get some." Similarly, Ruggeri testified it was never his intention to seek a forced sale of the property through the courts.

In March 2019, Via Appia filed a third amended complaint, which is the operative pleading in this appeal. That pleading's first cause of action requested partition of the Property in kind and alleged there was no compelling reason or extraordinary circumstances that would prevent the Property from being physically divided and apportioned between the parties. The third amended complaint also alleged causes of action against OPD and Opinski for breach of a de facto partnership agreement, breach of fiduciary duty, breach of implied in fact contract, fraud by concealment, intentional interference with contract, intentional interference with prospective business advantage, an accounting, and monies due and owing.

The answer of ODP and Opinski alleged partition by sale was the more appropriate and equitable method of partition because the Property could not be divided into subparcels of equal value. It also alleged division would substantially diminish the value of each parties' interest.

The parties agreed to bifurcation with the partition cause of action being tried to the court and the remaining claims being tried after the partition issue was resolved. In December 2021, the parties filed their trial briefs for the first phase.

In its trial brief, OPD argued partition by sale was more equitable because (1) the Property could not be equally divided in kind and (2) division in kind would substantially diminish the value of each party's interest. OPD stipulated to "Via Appia's expert's opinion of the current value [of] the property at One Million and Eight Hundred Thousand Dollars ($1,800,000.00) or Two Thousand and Three Hundred Dollars ($2,300.00) per acre." OPD also stipulated to purchasing Via Appia's one-third interest using that value, but expected its offer to "be rejected, because both parties ultimately agree the true worth of the subject property lies in future development."

Via Appia's trial brief argued a forced sale of the Property would be inequitable and OPD could not meet its burden of proving that a division into subparts of equal value could not be made or that a division would substantially diminish each party's interest. Via Appia asserted the Property's highest and best use was as grazing land, development under existing zoning was speculative, and future development outside of existing zoning was completely speculative and should not be considered. Via Appia stated its experts would present one of many possible ways to equitably divide the Property and asserted the proposed division was justified not only under the current and best use of the Property, but also took into account current zoning and the purported constraints raised by OPD. The proposed division in kind involved Via Appia receiving 35 lots of 5 acres and OPD receiving 22 lots of 5 acres and 11 lots of 40 acres. Under its proposal, Via Appia would receive 100 percent of the land impacted by airport zoning and 37.3 percent of land impacted by cultural sites. Via Appia stated it did "not believe these development 'constraints' have an actual effect on development within the existing zoning, [and] even if they did, it's a fair allocation."

To summarize, the parties' trial briefs show they agreed on the *appraised* value of the Property. The main difference in their approaches related to the potential future

development of the Property in deciding if there was a way to equitably divide the Property into proportionate subparcels.

*The Trial*

The trial on the partition cause of action began on December 7, 2021, took six days, and concluded in January 2022. Via Appia presented the testimony of a retained expert, Warren Sattler, to address whether the Property could be partitioned in kind into parcels of proportionate value and to explain why his proposal, which was described in Via Appia's trial brief, was an equitable partitioning in kind. Sattler's proposal had 221 acres being allocated to Via Appia, which was less than one-third of the size but, in Sattler's opinion, reflected one-third of the Property's value. Sattler stated there were a number of ways the Property could be partitioned, and his proposal was not the only way. Touching on the primary difference in the parties' approaches, Sattler stated that in splitting the Property into two parcels, "the only way you are going to do that is to look at what it currently is used for regardless of the intent of the ownership. That is purely speculative and may be ill conceived, because there's no demand for any sort of substantial development." Sattler agreed with an appraiser's opinion that "the maximum productive use at the present time is to continue the current use because of the economics and limited demand for new development in the area" and that the highest and best use of the land was for investment purposes. Sattler testified he did consider some possibilities of development but that was done by staying within what was allowed under the general plan.

*Posttrial Briefs*

In March 2022, the parties filed posttrial briefs followed by reply briefs. The briefing reflected the parties' dispute about the role of potential future development in applying the tests for whether partition by sale would satisfy the statutory requirement that a sale "be more equitable than division of the property." (§ 872.820, subd. (b).) Via Appia argued that in applying the test addressing whether it was possible to divide the

9.

Property into subparcels of proportionate value, the correct legal standard was the Property's immediate value "compared to an immediate sale of the Property **as it is today**." Via Appia also argued the $1.8 million appraised value was the only number the court could considered in applying the test addressing whether there would be a substantial diminution in value if the Property was split. Via Appia reiterated its arguments that OPD's approach to value was flawed because it relied on speculation about potential future development—development Via Appia asserted was speculative even under existing zoning.

OPD's briefing argued the value to be considered in deciding whether partition by sale was more equitable than physical division must include the Property's development potential, which was why the parties bought the Property in the first place. OPD asserted the Property's physical characteristics and configuration made an equal division impossible and any division would create significant barriers to its development of the subparcels it received in a partition in kind.

### Interlocutory Judgment

On May 9, 2022, the trial court filed an interlocutory "Judgment on Partition Action" (boldface omitted). Before filing the judgment, the trial court did not announce a tentative decision or issue a proposed statement of decision or a proposed judgment. The judgment is five pages long and, in practical effect, is a combination of a statement of the court's rationale followed by the terms of the judgment. The document contained four headings—Introduction, Jurisdiction Issue, Partition, and Judgment

The introduction identified the Property and the parties and described the acquisition of their interests in the Property and the events leading to the partition action. It included the trial court's finding that Opinski had the Property appraised three times from 2015 to 2021. In May 2015, Thomas Wilkins appraised the Property and the adjacent 200 acres owned by OPD and concluded the then market value of the land was $2,037 per acre. Based on that per acre value, the Property was worth approximately

$1.59 million. In 2017, James Cogdill appraised the Property and the 200-acre parcel in connection with Opinski's pending dissolution proceedings. Codgill concluded the Property was worth $2,000 per acre for a total value of approximately $1.54 million. In April 2021, Gregg Palmer appraised the Property at approximately $1.76 million, or about $2,250 per acre. Each appraisal estimated the Property's total value was less than what Via Appia paid for its one-third interest in 2005.

Under the "Partition" heading, the court began by noting neither party had undertaken any substantive acts to formally begin the development process, such as submitting a preapplication to the county planning department. The court addressed the parties' purpose or intent by finding "that each party purchased their interests in the property at amounts substantially above the value of the property as grazing land, and with the specific goal of future development of the property. The parties are not cattlemen, they are developers."[4] Next, the court set forth its analysis and findings relating to which type of partition was appropriate. The court described applicable law by stating:

> "The parties are in agreement as to the law of partition and each relies on the seminal case of *Butte Creek Island Ranch v. Crim* (198[2]) 1[36] Cal.App.3d 360. Under *Butte Creek* the party seeking partition by sale bears the burden of proving that a sale would be more equitable than partition in kind and must meet one of two tests. A partition by sale is justified either if (1) the property cannot be divided into subparcels of equal value; or (2) that division of the land would substantially diminish the value of each party's interest."

---

[4] We interpret the court's use of the terms "development" and "developers" broadly to include the process of obtaining the entitlements necessary before construction of roads, other infrastructure, and buildings could begin. Used in that sense, the court did not commit a factual error by finding Via Appia purchased its interest with the goal of future development—that is, obtaining entitlements that would increase the Property's value.

The trial court then set forth a hypothetical situation where partition in kind would be easy. That hypothetical is discussed in part III.A., below. The court found each party purchased the land with future development in mind and paid substantially more than its value as grazing land; the parties had presented nothing formal to the County of Mariposa for the Property's development; and the Property was in line for future development but there were many governmental hurdles to overcome, including amending the county's general plan, rezoning, and extending basic services such as fire protection, water, and sewer. Also, a few acres of the Property are included in an airport exclusion zone and construction limitations apply to areas in the airport's flight path. A portion of the Property is separated from a landfill by a narrow strip of land and the development of housing on that portion might be incompatible with the odors, noise and dust generated by the landfill. The Property's development also is affected by the availability of water; the existence of cultural sites; the preservation of natural areas containing heritage oaks, seasonal streams, and a pond; variations in terrain from relatively flat to relatively hilly; and direct access to Highway 49.

The trial court noted Via Appia's arguments that the Property's lack of uniformity was not a bar to partition in kind and that OPD's reliance on value based on future development plans was too speculative to be considered in determining whether the Property could be divided into subparcels of equal (i.e., proportionate) value. The court ended its discussion under the "Partition" heading by stating:

> "This Court finds the sole intent of the parties in purchasing their interests in this property was to develop the property. Therefore, it is impossible at this time for the Court to say the property can be split into subparcels of equal value for future development purposes because there are too many variables for the court to determine what the current value of the property is for that purpose. For that same reason, the Court cannot find that partition by sale would substantially dim[in]ish the value of each party's interest in their respective shares."

The terms of the judgment provided: "The request for partition in kind is denied and partition by sale is ordered. [¶] Pursuant to Code of Civil Procedure section 872.820, it is ordered that the property be sold, and the proceeds be divided among the parties in accordance with their respective interests." The judgment also stated the trial court would order the appointment of a referee to advise it whether the Property should be sold at public auction or private sale and the terms of any such sale. It also directed the parties to meet and confer to see if they could agree on who would be appointed as the referee.

*Postjudgment Proceedings*

A week after filing the judgment, the trial court held a trial setting conference for the second phase of the bifurcated trial. Proceedings at the conference are relevant to the procedural issues raised in this appeal. Those proceedings, along with Via Appia's subsequently filed request for statement of decision and objection to the interlocutory judgment, are described later in this opinion.

In July 2022, Via Appia filed a timely appeal. An interlocutory judgment in an action for partition is appealable. (§ 904.1, subd. (a)(9).)

**DISCUSSION**

I.    PARTITION LAW

Partition is a procedure for segregating and terminating common interests in a parcel, which allows cotenants to avoid the inconvenience and dissension that may arise from joint possession of land. (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596 (*Cummings*).) In 1975, the California Law Revision Commission recommended legislation to reorganize, revise, and modernize California's partition statute. (Recommendation Relating to Partition of Real and Personal Property (Jan. 1975) 13 Cal. Law Revision Com. Rep. (1975) p. 411 (1975 Recommendation).) In 1976, the Legislature enacted chapters one through nine of title 10.5 of part 2 of the Code of Civil

Procedure (Title 10.5).  (Stats. 1976, ch. 73, § 6, pp. 111–129.)  Those provisions, sections 872.010 through 874.240, governed actions for partition of real property and some actions for partition of personal property.  (§ 872.020 [scope of title].)[5]  Despite the statutory nature of an action for partition, " 'it is nonetheless an equitable proceeding.' " (*Cummings*, *supra*, at pp. 596–597.)

The statute authorizes any co-owner of real property to bring an action for partition.  (§ 872.210; *Cummings*, *supra*, at p. 596.)  Here, Via Appia and OPD are co-owners of the Property and, thus, Via Appia is entitled to partition.

A.      Manner of Partition—Physical Division and Sale

When a court determines a plaintiff is entitled to partition, the court "shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property and, unless it is to be later determined, *the manner of partition*."  (§ 872.720, subd. (a), italics added.)  Here, the parties dispute the manner of partition—that is, "whether the property should be physically divided or sold."  (4 Miller & Starr, California Real Estate (2023 4th ed.) § 11:15, p. 11-40 (Miller & Starr).)

Physical division of property is addressed in section 872.810, which states in full: "The court shall order that the property be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment."  The Law Revision Commission comment to this section states it continues the preference for division in kind and notes that, in appropriate cases, a court may order partition by sale or by appraisal.  (1975 Recommendation, *supra*, at p. 439.)

---

[5]      In 2021, the Legislature added a tenth chapter, then known as the Uniform Partition of Heirs Property Act.  (Stats. 2021, ch. 119, § 2; see former § 874.311.)  In 2022, that chapter was amended to expand its scope to any real property held in tenancy in common where the partition of the property was not governed by a recorded agreement binding all cotenants.  (Stats. 2022, ch. 82, §§ 3–12.)  The tenth chapter is now known as the Partition of Real Property Act and it "applies to actions for partition of real property filed on or after January 1, 2023."  (§ 874.311, subds. (a), (c).)  Thus, the Partition of Real Property Act does not apply to Via Appia's partition cause of action.

Division by sale is addressed in section 872.820, which provides in pertinent part: "Notwithstanding Section 872.810, the court shall order that the property be sold and the proceeds be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment in the following situations: [¶] … [¶] (b) The court determines that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property. For the purpose of making the determination, the court may appoint a referee and take into account his report." Under this provision, partition by sale with a division of the proceeds is an exception to the general rule that prefers partition in kind. (1975 Recommendation, *supra*, at p. 440.) Also, "[s]ubdivision (b) changes the standard for allowing a sale of the property from 'great prejudice' to 'more equitable,' thereby enabling sale is cases in which it previously was precluded." (1975 Recommendation, *supra*, at p. 440.)[6]

Under sections 872.810 and 872.820, it is presumed that it is more equitable to divide the property physically and distribute a portion to each cotenant. (*Butte Creek Island Ranch v. Crim, supra,* 136 Cal.App.3d 360, 365 (*Butte Creek*); Miller & Starr, *supra*, § 11:17, p. 11-43.) The presumption is a rebuttable presumption affecting the burden of proof. (See Evid. Code, §§ 601 [classification of presumptions], 605 [presumption affecting the burden of proof defined].) Thus, the party who seeks a sale, rather than a physical division, has the burden of proving that a sale is "more equitable than division of the property" as that phrase is used in section 872.820, subdivision (b). (*Butte Creek, supra*, at p. 366; Miller & Starr, *supra*, § 11:17, p. 11-43; see Evid. Code, § 606 [effect of presumption affecting the burden of proof].)

In *Butte Creek*, the plaintiff and the defendant each owned an undivided one-half interest in the land, the plaintiff filed a partition action, and the trial court ordered a

---

[6]     Thus, the arguments in Via Appia's opening brief that incorporate the great prejudice standard do not accurately reflect current law.

partition of the land by sale with a division of the proceeds. (*Butte Creek*, *supra*, 136 Cal.App.3d at p. 361.) The defendant appealed, contending the land should have been divided in kind. (*Ibid*.) The appellate court identified two types of evidence that would prove partition by sale was more equitable, determined the plaintiff did not present evidence under either test, reversed the judgment for partition by sale, and remanded the case to the trial court with directions to divide the property in kind. (*Butte Creek*, *supra*, 136 Cal.App.3d at pp. 367–369.)

Under *Butte Creek*'s first test, a party may carry the burden of proving a sale of the property is more equitable by presenting evidence sufficient to show "that the property is so situated that a division into subparcels of equal value cannot be made." (*Butte Creek*, *supra*, 136 Cal.App.3d at p. 366.) Stated another way, "the party desiring the sale must show that the land cannot be divided equally."[7] (*Ibid*.) Evidence that the land is not fungible or uniform in character is not sufficient to meet this test. (*Ibid*.) The test is met, for example, if most of the land's value is derived from a water well and any subparcel without the well would be a little value. (*Ibid*.) In such circumstances, a division into subparcels of equal value cannot be made. (*Ibid*.) The test also is met by a small inside lot that contains structures located in such a way as to preclude an equal division. (*Ibid*.)

Under the second test described in *Butte Creek*, the party seeking partition by sale may carry its burden of proof by showing that, "due to the particular situation of the land, the division of the land would substantially diminish the value of each party's interest." (*Butte Creek*, *supra*, 136 Cal.App.3d at p. 367.) This test considers "whether a partition

---

[7]    The statutes refer to division of the property or proceeds "among the parties in accordance with their interests in the property." (§§ 872.810, 872.820.) Thus, *Butte Creek*'s use of the phrases "subparcels of equal value" and "divided equally" was appropriate under the facts because each party owned a one-half interest in the land. Where, as in this case, the ownership interests are unequal, the appropriate phrases would be *subparcels of proportionate value* and *divided proportionately*. Stated another way, the phrase "subparcels of equal value" means *subparcels of value equal to each party's interest in the property.* (§§ 872.810, 872.820.)

in kind would result in a cotenant receiving a portion of the land which would be worth materially less than the share of the money which could be obtained through sale of the land as a whole. [Citation.] This is a purely economic test." (*Ibid*.) The second test was satisfied in a case involving a 17.4-acre movie studio "developed in such a unique manner that physical division would result in damage to the aggregate value of the land in the amount of $1.5 million." (*Ibid*., citing *Formosa Corp. v. Rogers* (1951) 108 Cal.App.2d 397, 402.)

B.     Standard of Review

The standard of appellate review for an interlocutory judgment of partition is an abuse of discretion. (*Cummings*, *supra*, 13 Cal.App.5th at p. 597.) The parties agree that the abuse of discretion standard applies; they also recognize that more specific standards may apply to particular questions under review. Their approach is consistent with the principles set forth by our Supreme Court in *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706:

> "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Id*. at pp. 711–712.)

Here, we conclude these general principles about the abuse of discretion standard of review also apply to an appellate court's evaluation of whether a trial court committed an abuse of discretion in rendering an interlocutory judgment of partition. (See

*Cummings, supra,* 13 Cal.App.5th at p. 597 [an error of law or an arbitrary and capricious application of law to facts both constitute an abuse of discretion].)[8]

II.   PROCEDURAL ISSUES

Here, we explain how the trial court violated section 632 and Rule 3.1590 when it prematurely filed the interlocutory judgment.  We conclude those violations prevent the doctrine of implied findings from being applied to the judgment.  We also describe Via Appia's appellate strategy of not seeking the usual remedy for such violations—namely, a remand to comply with the procedures set forth in Rule 3.1590.

A.   Postjudgment Proceedings

The interlocutory judgment of partition was filed on May 9, 2022.  A week later, the trial court held a trial setting conference.  Counsel appeared using Zoom.  Near the beginning of the conference, counsel for Via Appia stated that he had anticipated a tentative decision under California Rules of Court, rule 3.1590(a), and described the rule's steps governing the issuance of a tentative decision, a request for a statement of decision, objections to a statement of decision, issuance of a proposed judgment, and objections to the proposed judgment.  Counsel also stated that he understood the court was skipping those steps and entering judgment.  The trial court replied:  "That's where I'm at, yes."  The court also stated that "if you have any formal request, I just ask that you go and file those."  Counsel then stated that (1) because there was no tentative

_____

**8**      The Fifth District has applied these principles defining the abuse of discretion standard in many other contexts.  (E.g., *Tulare Lake Canal Company v. Stratford Public Utility Dist.* (2023) 92 Cal.App.5th 380, 402 [denial of preliminary injunction]; *Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 460 [award of attorney fees under § 1021.5]; *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529 [award of child support]; *Hance v. Super Store Industries* (2020) 44 Cal.App.5th 676, 683 [award of attorney fees after settlement of a class action]; *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316 [grant of preliminary injunction]; *Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 561 [affirming dismissal of reverse validation cause of action based on a failure to comply with procedures in § 863].)

decision, he did not think he was subject to a 10-day deadline; (2) he wanted to make clear on the record he was "requesting the opportunity"; (3) he understood the court was going straight to a judgment; and (4) "[t]he only thing we would have left, then, is whether the clients want to file a notice of appeal." The court replied: "Right. And that's where I'm at. In my belief, that's a final judgment."

Three days later (10 days after the judgment was filed), Via Appia filed a request for statement of decision and objection to the interlocutory judgment. The request described the exchange between counsel and the trial court at the trial setting conference and then stated:

> "In an abundance of caution and to further preserve the record on appeal and avoid prejudice and presumed factual findings, [Via Appia] again requests that the Court follow procedures set forth in California Rule of Court 3.1590 and Code of Civil Procedure § 632 regarding issuance of a Tentative Decision and formally requests a Statement of Decision with regard to, without limitation, the following controverted issues. Because the Court has not issued a Tentative Decision, [Via Appia] has not had the opportunity to request a Statement of Decision and no Proposed Statement of Decision or a Proposed Judgment was issued to which [Via Appia] could object."

Via Appia's objections asserted the trial court did not find whether OPD had met its burden under either of the tests described in *Butte Creek* and, more specifically, asserted the court "made no findings as to whether [ODP] had met [its] burden to prove via admissible evidence that a division of the property would cause what each party received to be worth less than what they would receive in the sale of the property as a whole, or that a division of the property could not be made into subparcels of equal value." The objections also asserted substantial evidence was submitted to the trial court demonstrating various facts. For example, Via Appia asserted the evidence demonstrated a division of the Property would not decrease the value of what the parties would receive compared to a sale of the Property as a whole and, in fact, undisputed evidence "showed

19.

that the value of the property would increase if it was split into subparcels of equal proportionate (one-third/two-thirds) value."

In the last paragraph of the request, Via Appia objected to the premature entry of judgment and asked the trial court to withdraw the judgment and serve a tentative decision or proposed statement of decision with a proposed judgment to afford Via Appia the opportunity to request a statement of decision or object to the proposals. The court did not respond to the request filed by Via Appia.

B. Process for Rendering a Decision after a Court Trial

1. Violation of Procedure

Section 632 provides that, upon the trial of a question of fact by a superior court, "[t]he court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." When, as in this case, the court trial takes more than eight hours over multiple days, "[t]he request must be made within 10 days after the court announces a tentative decision." (§ 632.) These statutory provisions imply that the superior court is obligated to announce a tentative decision after a court trial that lasts more than eight hours over multiple days.

This implication is made explicit in the court rules. "On the trial of a question of fact by the court, the court *must* announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk." (Rule 3.1590(a), italics added.) Similarly, "[w]hen a factual issue raised by the pleadings is tried by the court separately and before the trial of other issues, the judge conducting the separate trial *must* announce the tentative decision on the issue so tried and must, when requested under Code of Civil Procedure section 632, issue a statement of decision as prescribed in rule 3.1590." (Rule 3.1591(a).) "Must" appears in both rules and is mandatory. (Rule 1.5(b)(1).) Consequently, we interpret the Rules to mean the trial court had a mandatory

obligation to announce a tentative decision in this case.  The trial court violated that obligation and, as a result, subsequent procedural steps were not completed before the court signed and filed the judgment.  (See Rule 3.1590(*l*) [signature and filing of judgment].)  For instance, the court did not order OPD to prepare a proposed statement of decision and a proposed judgment (Rule 3.1590(f)) and "the court [did not] prepare and serve a proposed judgment on all parties" (Rule 3.1590(h)).

2.     *Consequences of the Violations*

Next, we consider the consequences of the trial court's violations of section 632 and Rules 3.1590 and 3.1591.  Those provisions presume that courts will announce a tentative decision and, as a result, do not specify a procedure for addressing failures to comply.  Here, the failure to announce a tentative decision precluded Via Appia from completing the second step in Rule 3.1590's procedures—namely, requesting a statement of decision "[w]ithin 10 days after the announcement or service of the tentative decision." (Rule 3.1590(d).)  Thus, the court's premature filing of a judgment prevented Via Appia from timely requesting a statement of decision, not any act or omission by Via Appia.  Consequently, we reject OPD's argument that Via Appia waived or forfeited the protections of Rule 3.1590 by failing to timely request a statement of decision.

Ordinarily, the failure to provide a statement of decision does not require a new trial.  "Rather, the case is simply remanded with instructions to the trial court to issue a proper statement of decision."  (Fairbank, et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2023) ¶ 16:201, p. 16-47, citing *Karlsen v. Superior Court* (2006) 139 Cal.App.4th 1526, 1531; see *Gordon v. Wolfe* (1986) 179 Cal.App.3d 162, 168 ["the judgment is reversed and remanded with directions to trial court to prepare a statement of decision"].)  An exception exists for cases where the judge who presided over the trial is not available.  In those situations, no other judge can render a decision on

21.

the evidence presented at trial and, therefore, the matter must be retried. (*Karlsen*, *supra*, at p. 1531.)

Here, Via Appia has not requested the matter be remanded for (1) the completion of the process set forth in Rule 3.1590 or (2) a new trial. Instead, Via Appia has requested reversal of the judgment of partition by sale and a remand of the case to the trial court with directions to grant partition in kind. Before we analyze whether Via Appia has demonstrated it is entitled to the entry of judgment in its favor, we address the parties' dispute about whether this court must apply the doctrine of implied findings in conducting its review of the merits.

### 3. *Doctrine of Implied Findings*

The fundamental principles of appellate practice provide that (1) appellate courts presume the trial court's judgment is correct; (2) all intendments and presumptions are indulged to support the judgment on *matters as to which the record is silent*; and (3) the appellant bears the burden of affirmatively demonstrating error. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*); see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) California's doctrine of implied findings is a natural and logical corollary to these principles. (*Fladeboe*, *supra*, at p. 58.)

"Under the doctrine of 'implied findings,' if the record is silent, we must presume the trial court fully discharged its duty to consider all of the relevant statutory factors and made all of the factual findings necessary to support its decision for which there is substantial evidence. [Citations.] Where the record reflects what the court actually did, however, these presumptions do not apply." (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1320.)

An appellant can avoid application of the doctrine by completing two procedural steps. (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 58.) First, the appellant must secure a statement of decision pursuant to section 632 and Rule 3.1590. (*Fladeboe*, at p. 58.)

22.

Second, in accordance with section 634, the appellant must bring any ambiguities or omissions in the statement of decision to the trial court's attention. (*Fladeboe*, at p. 58; Rule 3.1590(d)–(g) [procedures for requesting, preparing and objecting to a statement of decision].)

Here, we conclude the doctrine of implied findings does not apply for two reasons. First, the trial court's premature filing of the interlocutory judgment of partition prevented Via Appia from completing the procedural steps that trigger the issuance of a statement of decision and the opportunity to object to any omissions or ambiguities. Second, the record is not silent as to the rationale for the trial court's decision to order partition by sale. The judgment included an explanation of the court's decision and, thus, "the record reflects what the court actually did." (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1320; see *In re Marriage of Seaman & Menjou* (1991) 1 Cal.App.4th 1489, 1494, fn. 3 [the judgment set forth the reasons for the award and, thus, the absence of a statement of decision did not hamper the appellate court's review].)

III.     THE MANNER OF PARTITION

A.     <u>The Hypothetical About Dividing Grazing Land</u>

Via Appia contends "the trial court abused its discretion by denying a division *in kind* while at the same time acknowledging that it could be done easily." The purported acknowledgement is contained in the judgment's sentence that states:

> "Clearly, if the land were to used solely for cattle grazing, partition in kind would be ordered as it would be a simple task to draw a line dividing the property into subparcels of equal value."

Via Appia has interpreted the phrase "were to used" to mean "were to be used" and, for purposes of this appeal, we assume that was trial court's intended meaning. In Via Appia's view of California case law, courts consistently have judged the impossibility of an equal division under *Butte Creek* based on the then current status of the property. Via Appia urges this court to "treat the trial court's hypothetical phrase ('If the land *were*

23.

*to be used* solely for cattle grazing,') as a finding that applies to the current status of the property."

We reject Via Appia's invitation to interpret the trial court's hypothetical as a finding of fact about the Property's current status. The court's statement is more reasonably interpreted as describing a hypothetical situation that is distinct from the circumstances that existed at the time of trial. First, the hypothetical echoes Sattler's testimony that "if it was just all about grazing you could just all draw a line anywhere and everything is equal." Second, the phrase "were to be used solely" includes future use and, therefore, the circumstances in the hypothetical are inconsistent with the court's finding that the parties did not purchase the Property to be used solely as grazing land, but paid prices above its value as grazing land with the specific goal of future development. (See fn. 4, *ante*.) This finding about making an investment that depends on future development comports with Sattler's testimony about holding the land for investment purposes and his proposed partition, which was based on five-acre lots that could be developed for residences under the general plan. Third, even if Via Appia's interpretation was one of multiple reasonable interpretations, it could not be adopted here. The applicable principles of appellate practice require judgments to be interpreted in a manner that favors its affirmance. (See pt. II.B.3., *ante*.)

B.     Current Use as the Basis for Determining Value

In the trial court, the parties disputed the role that potential future development of the Property should play in applying the tests for whether partition "would be more equitable than division of the property." (§ 872.820, subd. (b).) As described earlier, each of those two tests refers to "value." (*Butte Creek*, *supra*, 136 Cal.App.3d at pp. 366–367.)

24.

Via Appia contends the relevant "value" for applying the tests is based on the current use and market value and the trial court erred in considering future development value and the uncertainty of dividing that future development value proportionately.

OPD responds to Via Appia's assertion that a court must restrict the evidence it considers by arguing Via Appia has misstated California law. OPD cites *Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745 (*Richmond*), a case in which this court stated that section 872.840 "gives the trial court the power to use its own sound discretion in determining whether *under all of the facts and all of the evidence presented to it* the property should be partitioned in kind or sold." (*Richmond*, *supra*, at p. 758, italics added.) Section 872.840 addresses the partition of property held in trust. We conclude the evidence relevant to whether property held in trust should be partitioned by sale also is relevant for determining which manner of partition is more equitable under section 872.820, subdivision (b). We have located nothing in the comments of the Law Revision Commission that suggests a narrower standard of relevance should be applied when deciding which manner of partition is more equitable.

Therefore, to make the assessment of evidence under section 872.820, subdivision (b) consistent with the assessment conducted under section 872.840 and other areas of law that require value determinations, we adopt the following legal conclusions. First, a trial court's evaluation, of which manner of partition is more equitable for purposes of section 872.820, subdivision (b), should consider all the evidence presented that is relevant to the property's value and use. Second, a property's development potential is relevant to its value for purposes of applying the tests set forth in *Butte Creek*, *supra*, 136 Cal.App.3d at pages 366 through 367.

The foregoing conclusion about the evidence relevant to determining the value of property in a partition action parallels the rules for determining value in other areas of California law. For example, the Eminent Domain Law (§ 1230.010 et seq.) provides that just compensation for property taken is measured by its fair market value. (§ 1263.310.)

25.

The definition of fair market value refers to a willing seller and a willing buyer, "each dealing with the other with full knowledge of *all the uses and purposes for which the property is reasonably adaptable and available*." (§ 1263.320, subd. (a), italics added.) Accordingly, in eminent domain proceedings, the legislative and administrative restrictions on the property's use are factors the knowledgeable, willing buyer and seller would consider in agreeing upon a price. (*South Bay Irrigation Dist. v. California-American Water Co.* (1976) 61 Cal.App.3d 944, 982.) Therefore, those factors affecting future development are to be considered by the court in making its determination of market value. (*Ibid.*)

The same approach is taken when assessing property taxes based on the real estate's "fair market value." (Cal. Const., art. XIII, § 1; *Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606.) In that context, fair market value means "the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and both the buyer and the seller have knowledge of *all of the uses and purposes to which the property is adapted and for which it is capable of being used*." (Rev. & Tax Code, § 110, subd. (a), italics added.)

Similarly, a court deciding how much is owed on a deficiency after a judicial foreclosure sale must determine the fair value of the property sold. (§ 726, subd. (b).) "The determination of the 'fair value' is based on all of the circumstances that affect the value of the property, including potential uses, zoning requirements, and development possibilities as well as other factors, only one of which is the cash or cash-equivalent value of the property." (5 Miller & Starr, *supra*, § 13:283, p. 13-1274.)

To summarize, based on the interpretation of Title 10.5 adopted in *Richmond*, *supra*, 105 Cal.App.3d 745, and how value is determined in the contexts described above, we reject Via Appia's argument that the Property's current use or status should be the sole or primary basis for determining its value when applying the tests set forth in *Butte*

*Creek*. In short, the Property's development potential affects the "value" relevant to applying the tests and is a factor that should be considered in determining which manner of partition is "more equitable." (§ 872.820, subd. (b).)

C. Test One: Division into Subparcels of Proportionate Value

1. *Via Appia's Claims for Error and Relief Sought*

Via Appia contends the trial court erred in applying the *Butte Creek* test Via Appia has labeled as the "impossibility of equitable division" test. That test addresses whether "the property is so situated that a division into subparcels of [proportionate] value cannot be made." (*Butte Creek*, *supra*, 136 Cal.App.3d at p. 366.) Another way of stating the test is that "the party desiring the sale must show that the land cannot be divided equally" (*ibid*.), which in this case means divided in proportion to Via Appia's one-third interest and OPD's two-thirds interest in the Property.

Via Appia asserts that, "instead of basing the issue of whether the property can or cannot be equitably divided based on the current status of the property, the trial court based the 'possibility of equitable division' on how the subparcels would be valued in the future" and concluded that, because there were too many variables to make a determination of future development value at the time of trial, an equitable in kind partition was not possible. As described in part III.A., *ante*, Via Appia contends the trial court (1) abused its discretion by denying division in kind after it acknowledged that division in kind could be done easily and (2) amplified the abuse by using uncertainty about future development potential as the basis for rejecting the preference for an in kind division.

The relief on appeal sought by Via Appia is significant to our analysis of Via Appia's claims of trial court error. Via Appia's opening brief contends "the law requires that the Judgment be reversed and based on the finding that the land can be equally divided between them in proportion to their ownership interests, [Via Appia] requests that

this Court remand the case with an order that, on the basis of that finding, [the trial court] enter Judgment of partition in kind." Via Appia's reply brief concludes by requesting "this Court to remand the case with directions that the trial court order a partition *in kind* based on the present-day use and valuation with the assistance of a referee, if necessary."

In seeking reversal with directions for entry of a judgment of partition in kind, Via Appia has abandoned the intermediate appellate remedies of remanding for further proceedings that comply with section 632 and Rule 3.1590 and would result in the trial court addressing points Via Appia asserts were omitted from the rationale provided in the interlocutory judgment. Via Appia's all-or-nothing approach to this appeal undertakes the difficult task of demonstrating that, based on the record developed in the trial court, the only appropriate outcome is partition in kind. Consequently, we next consider two theories that, if established, would justify a reversal with directions for the entry of a judgment requiring partition in kind.

### 2.     *Relief Based on a Finding by the Trial Court*

The first theory does not require this court to evaluate the evidence and make findings because Via Appia relies on the trial court's purported finding that the Property easily could be divided in kind. The theory asserts that this court can apply California law to that finding and conclude partition in kind is required. The purported finding involves the trial court's hypothetical about land used solely for cattle grazing. In part III.A. of this opinion, we determined that the trial court's hypothetical is not a finding of fact about the Property and what Via Appia has termed its "current status." Because we have determined there is no finding of fact that the Property's current value is derived from its use as grazing land, it follows that Via Appia's theory based on the purported finding fails.

### 3. *Relief Based on a Failure to Carry the Burden of Proof*

A second theory that supports Via Appia's request for the entry of judgment in its favor is that, based on the record presented, this court can determine OPD failed to carry its burden of proving "that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property." (§ 872.820, subd. (b).) If the evidence presented was such that no reasonable trier of fact could find that partition by sale was more equitable than division in kind, then a judgment requiring physical division would be the only appropriate outcome. In that situation, further proceedings would give OPD an inappropriate second chance as carrying its burden of proof. This theory parallels that of a motion for judgment notwithstanding a verdict in which the moving party attempts to show that it is entitled to judgment in its favor despite the decision made by the jury.

Rephrasing this theory slightly, if the evidence presented by OPD failed, as a matter of law, to carry OPD's burden of proving partition by sale was more equitable, then the statutory preference for partition in kind would be the only remedy available under law. Via Appia's appellate briefing does not explicitly develop this theory, but Via Appia has made contentions about the absence of evidence on particular points, which can be interpreted as implying that Via Appia seeks the entry of judgment in its favor based on OPD's failure to carry its burden of proof. Consequently, we deem it appropriate to address the failure-of-proof theory.

Our analysis of the theory begins by identifying the applicable standard of proof. The parties' briefing does not address the applicable standard and we have located no published decision identifying the standard of proof used in determining whether partition by sale is more equitable than a physical division. Consequently, we resort to general principles and conclude the applicable standard is a preponderance of the evidence, which means showing the existence of the fact in dispute "is 'more likely than not.'" (*Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1093.)

29.

This legal conclusion is based on Evidence Code section 115, which establishes that the preponderance of the evidence standard is the default standard of proof in civil cases. (*Masellis*, *supra*, at p. 1086.)

The second step of our analysis identifies the standard this court should use in determining whether OPD failed to present sufficient evidence to prove it more likely than not that a partition by sale would be more equitable. We conclude the applicable standard is "whether the record developed before the trial court contains substantial evidence allowing a reasonable fact finder to make the challenged finding with the confidence required by the" the preponderance of the evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Id*. at p. 1006.) Generally, whether the record developed below contains substantial evidence is a question of law. (*Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1515; *Mau v. Hollywood Commercial Buildings, Inc.* (1961) 194 Cal.App.2d 459, 466.)

The third step of our analysis addresses Via Appia's specific contentions about the absence of evidence on particular points. Via Appia asserts that OPD presented no evidence that (1) "a proportional division could not be made based on current usage and current market value" and, instead, "presented opinion testimony that an *in kind* division could make future development of the Property more difficult"; (2) "any features on a proposed subparcel could not be separately appraised and taken into account for purposes of a proportional division" and (3) "the property could not be divided so that the two-thirds subparcel and the one-third subparcel could not both benefit from this speculative future development."

OPD responds to Via Appia's contentions about the absence of evidence by arguing this court should disregard those contentions because Via Appia made them

30.

without any citation to facts in the record or to legal authority. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 [ordinarily, challenges to the sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable and show why it is insufficient].)  Thus, OPD contends Via Appia has failed to carry its burden as the appellant to affirmatively demonstrate reversible error.

Alternatively, OPD argues the evidence is sufficient to support the trial court's decision.  OPD notes the judgment stated there was abundant evidence of the many issues affecting the Property's future development.  OPD describes those issues, discusses the evidence, and cites to the record where the evidence is located.  OPD finishes its discussion by asserting the evidence showed the portions of the Property with better access, soil quality, and topographical features could not be allocated equitably with the portions with constraints (such as wetlands, heritage oaks, other environmental issues, steep terrain, and the airport exclusions zone).  OPD also argued that a physical division would force the parties to work together in developing their respective parcels and further disputes would arise, which would limit development potential and increase their costs.

Here we consider Via Appia's argument that OPD "presented no evidence that a proportional division could not be made based on current usage and current market value."  We reject this argument's point about current usage because current usage is not the correct legal standard for determining whether the property's value can be equitably divided using partition in kind.  With respect to current market value, Via Appia's view of what constitutes current market value appears to be tainted by its legal errors about current usage and current status.  Alternatively, if Via Appia has taken the correct view of current market value—that is, a view in which the market takes into account the Property's potential for development—then argument fails because the record contains evidence establishing there are many factors that make it difficult to create subparcels that allocate the Property's value, which includes the value of future development,

31.

proportionately. Because of those factors, it is difficult to predict how that development will be dispersed across the Property and what portions will increase in value most from the development. This uncertainty, in turn, means any division of the Property at this point would be unlikely to equitably apportion the aggregate current market value of the Property into a two-thirds and one-third share. Consequently, based on the record presented, we conclude a reasonable trier of fact could find OPD carried its burden of proving a partition by sale was more equitable than physically dividing the Property.

Via Appia asserts that OPD "presented no evidence that any features on a proposed subparcel could not be separately appraised and taken into account for purposes of a proportional division." This argument fails for the same reason as the previous argument. It misses the points about (1) the uncertainty caused by the factors affecting the Property's development and how that development ultimately will be dispersed across the Property and (2) the impact of that uncertainty on whether an equitable physical division can be made now.

Via Appia also asserts that OPD merely "presented opinion testimony that an *in kind* division could make future development of the Property more difficult." This assertion about evidence presented is not relevant to the failure-of-proof theory analyzed here because such an analysis necessarily addresses the *absence of evidence* sufficient to carry OPD's burden of proof.

Consequently, we conclude Via Appia has not demonstrated it is entitled to the entry of judgment of partition in kind on the ground that OPD failed to carry its burden of proving "that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property." (§ 872.820, subd. (b).) Restated from another perspective, the record contains substantial evidence supporting a finding that physically dividing the Property would be inequitable because of uncertainty about how the Property's aggregate value would be realized if and when the development process is begun and, in the face of the numerous unknowns creating the uncertainty, the Property

32.

could not be divided in a manner that equitably protects the interests of each owner in a proportionate division.

### D. Other Issues

#### 1. *Physical Division Diminishing the Property's Aggregate Value*

Via Appia also argues the trial court erred in applying *Butte Creek*'s second test. We need not address those arguments because, to demonstrate a reversal of the judgment is warranted, Via Appia would have to demonstrate the judgment is erroneous under both tests described in *Butte Creek*. Because the judgment of partition by sale can be upheld under the first test, there is no need to address the second test. Any misapplication of the second test would be harmless error.

#### 2. *Judicial Admission*

OPD contends the original complaint's request for partition by sale constitutes a judicial admission that conclusively establishes a partition in kind would harm the development potential of the Property and diminish the value of each party's interest. Because the judgment is affirmed on an alternate ground, we need not analyze whether Via Appia made a binding judicial admission. (See *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452 [a judicial admission is ordinarily an unequivocal factual allegation by one party that is admitted by the opposing party].)

**DISPOSITION**

The interlocutory judgment of partition by sale is affirmed. Respondents shall recover their costs on appeal.

FRANSON, J.

WE CONCUR:

LEVY, Acting P. J.

DE SANTOS, J.

33.